THE STATE, MICHAEL E. McLAUGHLIN, PROSECUTOR, v THE MAYOR AND COUNCIL OF THE CITY OF NEWARK ET AL.

1. "An act providing for the formation and establishment of wards in cities of the first class in this state," passed May 16th, 1894, is a general law.

2. The division of the wards into election precincts being conducive to the object expressed in the title, is properly embraced in the enactment.

3. If an amending statute changes a section of the prior statute merely by eliminating one of its provisions, the recital at length of the section as amended, in compliance with the constitutional direction, will not be deemed a re-enactment of the provisions which are retained, so as to repeal all laws which are then inconsistent with them.

4. An act passed May 16th, 1894, declared that it should take effect May 14th, 1894. *Held*, that it went into effect on its passage.

On *certiorari*.

Argued at June Term, 1894, before Justices DIXON, REED and ABBETT.

For the prosecutor, *Samuel Kalisch* and *Frederic W. Stevens.*

For the defendants, *Chandler W. Riker* and *Joseph Coult.*

The opinion of the court was delivered by

DIXON, J. This *certiorari* brings up the appointment and proceedings of commissioners under "An act providing for the formation and establishment of wards in cities of the first class in this state," passed May 16th, 1894. *Pamph. L., p.* 387.

The reasons assigned for setting aside what has been done will be briefly considered in the order in which they were presented.

*First.* It is said the act is special, and therefore unconstitutional, because it is confined to cities of the first class, *i. e.,* those having a population exceeding one hundred thousand, while its provisions would be appropriate to all cities.

The act empowers the mayor of any city of the first class to appoint five commissioners, whose duty it shall be to divide the city into wards and the wards into election precincts, and it declares how the commissioners shall proceed in the execution of this duty.

It thus appears that the statute deals only with the structure of the municipal government—the formation of the machinery by which the affairs of the city are to be regulated; that, for such legislation, the municipalities of the state may be distributed into classes constituted on the basis of their population, seems to be settled beyond dispute in this court. *Mortland* v. *Christian*, 23 *Vroom* 521 ; *In re Haynes*, 25 *Id.* 6 ; *Matheson* v. *Caminade*, 26 *Id.* 4 ; *Parker* v. *City of Newark, ante p.* 83.

*Second.* It is urged that the act is likewise special, because it provides for only a single occasion—a single division of a city into wards.

I do not perceive how this fact can render the act special. Laws have frequently been passed delegating to municipal and other corporations powers which, when once exercised, were spent or for a time put in abeyance, but such laws have never, on that account, been deemed violations of the constitutional provisions against special legislation. If the power be conferred upon every member of a constitutional class, in terms which are equally applicable to every member, the law delegating the power is general, whatever the nature of the power may be. *In re Cleveland*, 23 *Vroom* 188.

We consider the act general.

The next reason for reversal is that the law embraces an object which is not expressed in its title, viz., the division of the new wards into election precincts.

The end sought by the formation and establishment of wards in a city is the securing of local representation in the municipal government for the various sections of the city. To this end the division of the wards into election precincts is directly conducive; it is the means by which the object expressed in the title—the establishment of wards—is to be attained. It therefore is properly embraced within that title. *Onderdonk* v. *Plainfield*, 13 *Vroom* 480; *Payne* v. *Mahon*, 15 *Id.* 213; *Wood* v. *Atlantic City*, 27 *Id.* 232.

The last objection to be considered is that the act either had been repealed or had not gone into effect when the commissioners were appointed, June 25th, 1894.

The argument to make out the repeal of the act is thus presented:

1. On April 26th, 1894 (*Pamph. L.*, *p.* 145), "An act concerning wards and district lines in the cities of this state" was passed, the second section of which is "That all acts and parts of acts inconsistent with this act be and the same are hereby repealed, and this act shall take effect May 8th, 1894."

2. On May 17th, 1894, an amendment to this act was passed (*Pamph. L.*, *p.* 417), which provided that the second section should be amended so as to read as follows: "That

all acts and parts of acts inconsistent with this act be and the same are hereby repealed."

3. The act of May 16th, 1894, is inconsistent with the act of April 26th, 1894, and therefore was repealed by the later amendment of May 17th, 1894.

For the support of this argument, two propositions are essential—*first*, that the acts of April 26th and May 16th are inconsistent; *second*, that the amendment of May 17th evinces a purpose to repeal whatever laws were at that date inconsistent with the act of April 26th.

Without stopping to consider the first proposition, we think the second is not true.

Under our constitution, an amended section must be recited at length in the amending act, and, in compliance with this requirement, the legislature gave to the act of May 17th the form in which it appears. The evident design, however, was not to re-enact any portion of the act of April 26th, not to enlarge its scope, but rather to abrogate part of it, the part which declared that it should take effect on May 8th, 1894. The legal result was that the act of April 26th, which had been in force from May 8th to May 17th, became on the last-named day suspended, and so remained until July 4th, when it resumed its original efficacy. But its repealing power was never extended beyond those statutes which on April 26th were inconsistent with it. By observing the constitutional form of amending a section of a statute the legislature does not express an intention then to enact the whole section as amended, but only an intention then to enact the change which is indicated. Any other rule of construction would surely introduce unexpected results and work great inconvenience.

We think that if there be any inconsistency between the acts of April 26th and May 16th, the latter act must prevail.

The contention that the act of May 16th did not go into effect until July 4th is based upon the claim that as the act provided that it should take effect on May 14th, which was impossible, being two days before its passage, therefore the case falls within the general statute (*Rev., p.* 1122, § 13),

which declares that public acts shall go into effect on July 4th next after their passage, "unless otherwise specially provided for in such act."

This general statute creates, of course, no limitation upon the constitutional power of the legislature. It merely prescribes a rule of interpretation to be applied by the courts, in order to ascertain the intention of the lawmaker. That intention when ascertained, if expressed in a constitutional mode, becomes the law, whether it has been expressed in the form pointed out by prior statutes or not. And if the legislative purpose can constitutionally be effectuated in part, but not wholly, and it is reasonable to suppose that the part capable of operation was not intended by the legislature to be dependent upon what is incapable, then the courts must enforce so much of the purpose as is practicable. *Sedgw. Stat. & Const. L.* 489 ; *State* v. *Kelsey*, 15 *Vroom* 1, 29.

It is indisputable that, on the face of this act, the legislature has declared its intention that the act should be in force at all times after May 14th, and there is not the slightest ground for supposing that this intention, so far as it related to the time subsequent to the passage of the act on May 16th, was dependent on the efficiency of the act prior to its passage. We are therefore bound to hold that the act went into effect on its passage, and was operative on June 25th, when the commissioners were appointed.

The last reason for reversal, that the commissioners, in dividing the city into wards, did not pay due regard to equality of population, was formally abandoned by the prosecutor, and so needs no consideration.

Our conclusion is that the proceedings under review are legal.