[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 182.]

**Stevens, Appellant, v. Ackman et al.; City of Middletown, Appellee.**

**[Cite as *Stevens v. Ackman*, 2001-Ohio-249.]**

*Torts—Wrongful death—Appellate procedure—Final order—Trial court order entered in a civil action for damages seeking recovery for a wrongful death is not an order entered in a special proceeding for purposes of R.C. 2505.02—Political subdivision tort liability—R.C. 2744.02(C), as purportedly enacted in 1996 Am.Sub.H.B. No. 350, is invalid.*

(Nos. 00-225 and 00-513—Submitted November 29, 2000—Decided March 28, 2001.)

APPEAL from and CERTIFIED by the Court of Appeals for Butler County, No. CA99-03-0053.

————————————

SYLLABUS OF THE COURT

1.  A trial court order entered in a civil action for damages seeking recovery for a wrongful death is not an order entered in a special proceeding for purposes of R.C. 2505.02.

2.  R.C. 2744.02(C), as purportedly enacted in 1996 Am.Sub.H.B. No. 350, is invalid.  R.C. 2744.02(C) was neither enacted nor reenacted by 1997 Am.Sub.H.B. No. 215.  (*State ex rel. Ohio Academy of Trial Lawyers v. Sheward* [1999], 86 Ohio St.3d 451, 715 N.E.2d 1062, paragraph three of the syllabus, and *Hubbard v. Canton City School Bd. of Edn.* [2000], 88 Ohio St.3d 14, 722 N.E.2d 1025, followed.)

————————————

**ALICE ROBIE RESNICK, J.**

I

Facts and Procedural History

{¶ 1} On December 16, 1994, seventeen-year-old Corey C. Banks died in an automobile accident on Roosevelt Avenue (also called Roosevelt Road) in Middletown, Ohio. Banks was a passenger in an automobile operated by Emily J. Duff, now known as Emily J. Ackman, a classmate of his at Middletown High School. Duff's vehicle went left of center in a heavy rain and collided with an oncoming vehicle. When police arrived at the scene, Banks was dead.

{¶ 2} On December 13, 1996, plaintiff-appellant Shira Sue Stevens (the mother of Banks and the administrator of his estate) filed a complaint against Ackman and appellee, the city of Middletown, in the Butler County Court of Common Pleas, alleging that they were responsible for the wrongful death of Banks. Stevens asserted that Middletown was liable for Banks's death for its failure to properly maintain Roosevelt Road, including allowing an unsafe pavement edge drop to exist on the side of the road, which caused Ackman to lose control of her vehicle when she attempted to return it to the roadway after it had dropped off the pavement edge. Stevens alleged that Middletown breached its duty to maintain Roosevelt Road open, in repair, and free from nuisance, and that the roadway was unsafe.

{¶ 3} Middletown moved for summary judgment pursuant to R.C. Chapter 2744, the Political Subdivision Tort Liability Act, claiming that it was entitled to statutory immunity and that Stevens was unable to prevail against it as a matter of law. Middletown argued that the exception to political subdivision immunity found in R.C. 2744.02(B)(3) ("political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads * * * open, in repair, and free from nuisance") was not applicable in the circumstances of this case to defeat its immunity.

2

**{¶ 4}** The trial court denied the motion for summary judgment, relying on this court's decisions in *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 6 OBR 186, 451 N.E.2d 1193; *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819, 823; and *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 632 N.E.2d 502, to conclude that the alleged failure of the city to eliminate the edge drop on Roosevelt Road was potentially a failure to keep the roadway free from nuisance pursuant to the exception to immunity under R.C. 2744.02(B)(3). The trial court specifically rejected Middletown's argument that the city could be liable only for the failure to maintain the actual roadway itself, so that there could be no liability because the shoulder or berm of Roosevelt Road was not the roadway.

**{¶ 5}** The trial court also found that there were issues of fact as to whether Middletown had notice of the condition, and further that there was no merit to Middletown's contention that the defense for discretionary decisions contained in R.C. 2744.03(A)(5) was applicable. The trial court determined that the city had failed to meet its burden in support of the motion and that genuine issues of material fact remained to be determined.

**{¶ 6}** Middletown appealed the denial of its summary judgment motion to the Court of Appeals for Butler County, initially relying on R.C. 2744.02(C): "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in Chapter 2744. or any other provision of the law is a final order."

**{¶ 7}** After the parties had briefed the appeal on the merits, Stevens filed a motion to dismiss the appeal on August 10, 1999, primarily arguing that R.C. 2744.02(C) was not retroactive to apply to a case arising from a death that occurred in 1994. Stevens also argued that the order appealed from was not a final order because it was taken from a trial court ruling on issues of fact, not of law, and further argued that the failure of the trial court to determine in its order that there

was "no just reason for delay" deprived the court of appeals of jurisdiction. See Civ.R. 54(B).

{¶ 8} Before the court of appeals ruled on that motion to dismiss, this court, on August 16, 1999, announced the decision in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062. On August 25, 1999, Stevens filed a second motion in the court of appeals to dismiss the appeal, again urging that the court of appeals was without jurisdiction to entertain Middletown's appeal. Stevens argued that because R.C. 2744.02(C) was enacted in Am.Sub.H.B. No. 350 ("H.B. 350"), and because this court's opinion in *Sheward*, at paragraph three of the syllabus, had declared H.B. 350 to be "unconstitutional in toto," there was no basis for the court of appeals to maintain jurisdiction over the appeal.

{¶ 9} Middletown responded to Stevens's second motion to dismiss by arguing that, as an alternate ground for its appeal, the court of appeals had jurisdiction over the order pursuant to R.C. 2505.02(B)(2) as an order that affected a substantial right made in a special proceeding, or pursuant to R.C. 2505.02(B)(4) as an order that denied a provisional remedy. Middletown also argued that the lack of Civ.R. 54(B) certification by the trial court did not deprive the court of appeals of jurisdiction.

{¶ 10} In its opinion, the court of appeals denied both of Stevens's motions to dismiss. The court of appeals found that it had jurisdiction over the appeal pursuant to R.C. 2505.02(B)(2), finding that the trial court order denying statutory immunity affected a "substantial right" and was entered in a "special proceeding," and so denied Stevens's second motion to dismiss for that reason. The court of appeals found that the underlying action was a "civil claim for wrongful death and survivorship," both of which were unknown at common law and "did not exist in law or equity prior to 1853," so that a special proceeding was involved within the meaning of R.C. 2505.02(A)(2).

4

**{¶ 11}** The court of appeals therefore did not specifically rule on Stevens's argument, raised within her second motion to dismiss, that it had no jurisdiction pursuant to R.C. 2744.02(C) in the wake of the *Sheward* decision. Furthermore, because it based its jurisdiction on R.C. 2505.02(B)(2), the court of appeals denied Stevens's first motion to dismiss, relating to retroactivity of R.C. 2744.02(C), as moot.

**{¶ 12}** After thus finding Middletown's appeal properly before it, the court of appeals reversed the judgment of the trial court on the merits and entered summary judgment in favor of Middletown, finding that the municipality was entitled to political subdivision immunity. The court of appeals held as a matter of law that the edge drop at issue did not constitute a nuisance within the meaning of R.C. 2744.02(B)(3), so that Middletown could not be liable for an alleged failure to keep the roadway free from nuisance.

**{¶ 13}** Finding its judgment on the merits issue to be in conflict with the judgment of the Fifth District Court of Appeals in *Thompson v. Muskingum Cty. Bd. of Commrs.* (Nov. 12, 1998), Muskingum App. No. CT98-0010, unreported, 1998 WL 817826, the court of appeals granted Stevens's motion to certify a conflict. The issue certified is "whether an edge drop on the berm of a county or city road, in and of itself, constitutes a nuisance within the meaning of R.C. 2744.02(B)(3)." In *Thompson*, the Fifth District Court of Appeals found that whether the edge drop between the pavement and the berm is a nuisance for purposes of R.C. 2744.02(B)(3) is a factual question, relying on *Dickerhoof*, 6 Ohio St.3d 128, 6 OBR 186, 451 N.E.2d 1193. Thus, the court of appeals in *Thompson* refused to adopt the position adopted by the court of appeals in the case *sub judice*, which is that an edge drop cannot be a "nuisance" as that term is used in R.C. 2744.02(B)(3).

**{¶ 14}** Stevens also moved the court of appeals to certify a conflict on the issue of whether, in the wake of the *Sheward* decision, a court of appeals has

jurisdiction pursuant to R.C. 2744.02(C) to hear an interlocutory appeal from the denial of a political subdivision's summary judgment motion based upon statutory immunity. The court of appeals declined to certify a conflict on that issue.

{¶ 15} The cause is now before this court upon our determination that a conflict exists on the edge-drop issue (case No. 00-513), and pursuant to the allowance of a discretionary appeal (case No. 00-225).

II

Appellate Court Jurisdiction

A

Standards for Appealability

{¶ 16} Section 3(B)(2), Article IV of the Ohio Constitution limits the appellate jurisdiction of the courts of appeals to the review of judgments and final orders of lower courts. Section 3(B)(2), Article IV provides:

"Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district and shall have such appellate jurisdiction as may be provided by law to review and affirm, modify, or reverse final orders or actions of administrative officers or agencies."

{¶ 17} The initial issue for resolution, as a prerequisite to any consideration of the merits of this case, is whether the trial court order denying Middletown's motion for summary judgment premised on immunity under R.C. Chapter 2744 was a final appealable order. If this order was not a final appealable order, the court of appeals was without jurisdiction to entertain the appeal, and should have dismissed it without reaching the merits.

{¶ 18} The denial of a motion for summary judgment generally is considered an interlocutory order not subject to immediate appeal. See *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 90, 554 N.E.2d 1292, 1293-1294. See, also, *State ex rel. Overmeyer v. Walinski* (1966), 8 Ohio St.2d 23, 37 O.O.2d 358, 222

N.E.2d 312. In this case, Middletown argues that at least one exception to this general rule applies, so that the trial court order at issue was subject to an immediate appeal.

B

Appealability Pursuant to R.C. 2505.02(B)

{¶ 19} The court of appeals in this case specifically determined that R.C. 2505.02(B)(2) provided the basis for appellate jurisdiction. Therefore, we first consider the propriety of that determination.

{¶ 20} R.C. 2505.02(B) provides that "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

" * * *

"(2) An order that affects a substantial right made in a special proceeding * * *."

{¶ 21} R.C. 2505.02(A)(1) defines "substantial right" as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect."

{¶ 22} R.C. 2505.02(A)(2) defines "special proceeding" as "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity."

{¶ 23} In *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 108, 616 N.E.2d 213, 218, fn. 8, this court noted that in considering whether a particular order affected a substantial right in a special proceeding, the reviewing court's analysis first focuses on the special proceeding portion of the inquiry. Only if it is first determined that an order was entered in a special proceeding is it necessary to go on to consider whether the order affected a substantial right.

{¶ 24} This court held in *Polikoff*, at the syllabus, that "[o]rders that are entered in actions that were recognized at common law or in equity and were not

specially created by statute are not orders entered in special proceedings pursuant to R.C. 2505.02."

{¶ 25} In *Polikoff*, 67 Ohio St.3d at 104, 616 N.E.2d at 216, this court quoted from *Missionary Soc. of M.E. Church v. Ely* (1897), 56 Ohio St. 405, 407, 47 N.E. 537, 538: "[A]ny ordinary proceedings in a court of justice, by which a party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense, involving the process and pleadings, and ending in a judgment, is an action, while every proceeding other than an action, where a remedy is sought by an original application to a court for a judgment or an order, is a special proceeding."

{¶ 26} Furthermore, *Polikoff*, 67 Ohio St.3d at 105, 616 N.E.2d at 216, quoted *In re Estate of Wyckoff* (1957), 166 Ohio St. 354, 358, 2 O.O.2d 257, 260, 142 N.E.2d 660, 663-664, which in turn had quoted *Schuster v. Schuster* (1901), 84 Minn. 403, 407, 87 N.W. 1014-1015, for the proposition that " '"[w]here the law confers a right, and authorizes a special application to a court to enforce it, the proceeding is special, within the ordinary meaning of the term 'special proceedings.' " ' "

{¶ 27} The *Polikoff* court, 67 Ohio St.3d at 105, 616 N.E.2d at 216, went on to again quote *Wyckoff*, 166 Ohio St. at 358, 2 O.O.2d at 260, 142 N.E.2d at 664, with approval: " ' [T]he proceeding provided by [the statute at issue], in connection with which a petition and no other pleadings are required and wherein there is notice only, without service of summons, and which represents essentially an independent judicial inquiry, is a special proceeding.' "

{¶ 28} In *Walters v. The Enrichment Ctr. of Wishing Well, Inc.* (1997), 78 Ohio St.3d 118, 121, 676 N.E.2d 890, 893, this court clarified the syllabus paragraph of *Polikoff:* "The determining factor of *Polikoff* is whether the 'action' was recognized at common law or in equity and not whether the 'order' was so

recognized. In making the determination courts need look only at the underlying action."

**{¶ 29}** For our purposes here, the key term in this statement is that the *underlying action* must be the focus of the inquiry.

**{¶ 30}** The court of appeals below, in ruling that a case seeking recovery for a wrongful death is a special proceeding, did not adequately address what the true "underlying action" was in the case before it, and so reached its conclusion through an analysis that strayed from the correct focus of the inquiry. This case, although it includes claims for wrongful death and survival claims, is an ordinary civil action seeking damages for purposes of R.C. 2505.02. The fact that a case involves an alleged wrongful death does not transform it into a special proceeding.

**{¶ 31}** R.C. Chapter 2125 is commonly denominated under the heading "Action for Wrongful Death." See heading to R.C. Chapter 2125 in both Baldwin's Ohio Revised Code Annotated and Page's Ohio Revised Code Annotated. The "action" referred to in this sense is a civil action for damages. It is apparent that R.C. Chapter 2125 does not give rise to a special proceeding in the sense that that term is used in *Ely*, *Schuster*, *Wyckoff*, and *Polikoff*. R.C. Chapter 2125 does not provide for a remedy to be sought through "an original application to a court for a judgment or an order" (*Ely*, 56 Ohio St. at 407, 47 N.E. at 538), it does not authorize "a special application to a court to enforce" a right (*Schuster*, 84 Minn. at 407, 87 N.W. at 1015), and it does not provide for what is "essentially an independent judicial inquiry" (*Wyckoff*, 166 Ohio St. at 358, 2 O.O.2d at 260, 142 N.E.2d at 664).

**{¶ 32}** R.C. Chapter 2125 details measures for pursuing a wrongful-death recovery within an ordinary action for money damages. R.C. 2125.01 provides that someone who causes the wrongful death of another "shall be liable to an action for

damages, notwithstanding the death of the person injured."[1]  This provision does not "specially create" an action or proceeding that was not recognized at common law or in equity within the meaning of *Polikoff* or of R.C. 2505.02(A)(2).  Thus, it does not establish the requirements that would be necessary for a case involving a wrongful death to be a special proceeding.  In the same way, no other provision within R.C. Chapter 2125 establishes the necessary requirements.

{¶ 33} When a court considers whether a particular statute specially creates an action or proceeding that may qualify as a special proceeding for purposes of R.C. 2505.02, the court must pointedly examine the basic core of the statute at issue. The court must specifically ask whether the particular statute actually does create a special proceeding, or whether the statute merely supplies details within the structure of an ordinary action.

{¶ 34} If an action has the characteristics of an ordinary action it does not qualify as a special proceeding.  See *Polikoff*, 67 Ohio St.3d at 107, 616 N.E.2d at 218: "[Plaintiffs] sought redress of an alleged wrong by filing a lawsuit in the court of common pleas.  * * *  The underlying action can be distinguished from a special proceeding in that it provides for an adversarial hearing on the issues of fact and law which arise from the pleadings and which will result in a judgment for the prevailing party."  See, also, *Walters*, 78 Ohio St.3d at 122, 676 N.E.2d at 893: "In the case *sub judice*, the underlying action was an ordinary civil action, seeking damages.  It was recognized at common law and hence was not a special proceeding."

{¶ 35} As in both *Polikoff* and *Walters*, the order at issue in this case was not entered in a special proceeding.  The "underlying action" is an ordinary civil suit for damages, which of course was known at common law.

---

1. Am.Sub.H.B. No. 350 attempted to amend R.C. 2125.01.  However, we do not identify the statute as "former," because H.B. 350 was declared unconstitutional in its entirety in *Sheward*, which had the effect of invalidating the amendment to R.C. 2125.01.  See *Harp v. Cleveland Hts.* (2000), 87 Ohio St.3d 506, 509, 721 N.E.2d, 1020, 1023, fn. 1.

**{¶ 36}** Although we have focused on the consideration that the true underlying action in this case was recognized at common law, there is another aspect of R.C. 2505.02 and *Polikoff* that indicates that the trial court order in this case was not entered in a special proceeding. Both R.C. 2505.02(A)(2) and *Polikoff's* syllabus paragraph require that a special proceeding be one "specially *created* by statute." (Emphasis added.)

**{¶ 37}** In *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 181, 637 N.E.2d 917, 921, a majority of this court, by quoting *Griffiths v. Earl of Dudley* (1882), 9 Q.B.Div. 357, 363, seemed to accept, at least by implication, that R.C. Chapter 2125 does not " 'give any new cause of action, but only substitute[s] the right of the representative to sue in the place of the right which the deceased himself would have had if he had survived.' " See *Thompson*, 70 Ohio St.3d at 186, 637 N.E.2d at 925 (Douglas, J., concurring in judgment).

**{¶ 38}** Therefore, the explicit requirement that a special proceeding be "specially created by statute" does not appear to be fulfilled in this case, as R.C. Chapter 2125 does not create a right of action for wrongful death.

**{¶ 39}** Also, there is a further obstacle to a wrongful-death action being a special proceeding, separate from those discussed above. R.C. 2505.02(A)(2) requires that for a proceeding to be special, it must be one "that prior to 1853 was not denoted as an action at law or a suit in equity." Ohio's first wrongful-death statute, as this state's version of what is commonly called Lord Campbell's Act, was enacted in 1851. See 49 Ohio Laws 117. Today's wrongful-death statute contains the essential provisions of the 1851 statute.

**{¶ 40}** Because a wrongful-death recovery was delineated by statute in 1851, an action for wrongful death *was* denoted as an action at law prior to 1853 for purposes of R.C. 2505.02(A)(2). Hence the precise statutory definition of special proceeding is not met for that reason.

**{¶ 41}** Because we have found that there is no special proceeding at issue in this case, we need not specifically consider whether the order appealed from affected a substantial right. See *Polikoff*, 67 Ohio St.3d at 108, 616 N.E.2d at 218, fn. 8.

**{¶ 42}** Having found that R.C. 2505.02(B)(2) does not confer jurisdiction on the court of appeals in this case, we further find that no other provision in R.C. 2505.02(B) supports the appeal.

**{¶ 43}** For all the foregoing reasons, we hold that a trial court order entered in a civil action for damages seeking recovery for a wrongful death is not an order entered in a special proceeding for purposes of R.C. 2505.02. We reverse the judgment of the court of appeals on this issue.

**{¶ 44}** Our conclusion that an order denying a motion for summary judgment in a civil action for damages involving a wrongful death is not an order entered in a special proceeding for purposes of R.C. 2505.02(B)(2) offers some consistency in an area of law that is frequently fraught with inexplicable discrepancies. It would be anomalous to hold that such an order would not be a final order in a case involving a personal injury, but would be one in a case involving a wrongful death, when the actions are so similar and are conducted procedurally in much the same manner. If a particular order is not appealable in a personal injury case, the same order should not be appealable in a wrongful-death case. We emphasize that, to qualify as a special proceeding, a particular proceeding must have the characteristics that indicate that an independent judicial inquiry is taking place. These characteristics are not present in the case *sub judice*.

C

Appealability Pursuant to R.C. 2744.02(C)

{¶ 45} Because we have found that R.C. 2505.02(B) does not support appellate jurisdiction in this case, we proceed to consider whether R.C. 2744.02(C) provides an alternative ground for the court of appeals to exercise appellate jurisdiction.

1

Am.Sub.H.B. No. 350 and the Ramifications of *Sheward*

{¶ 46} Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 3867, was signed into law by former Governor George Voinovich on October 28, 1996, and took effect on January 27, 1997. Am.Sub.H.B. No. 350 purported to amend, enact, or repeal "over one hundred sections of the Ohio Revised Code 'relative to changes in the laws pertaining to tort and other civil actions.' " See *Sheward*, 86 Ohio St.3d at 458, 715 N.E.2d at 1073, fn. 6, quoting the title of the Act. One of the purported new enactments of Am.Sub.H.B. No. 350 was R.C. 2744.02(C), which provided that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in Chapter 2744. or any other provision of the law is a final order." 146 Ohio Laws, Part II, 3989.

{¶ 47} Am.Sub.H.B. No. 350 also purported to amend R.C. 2501.02 to grant jurisdiction to courts of appeals "upon an appeal upon questions of law to review, affirm, modify, set aside, or reverse judgments or final orders of courts of record inferior to the court of appeals within the district, * * * INCLUDING AN ORDER DENYING A POLITICAL SUBDIVISION OR AN EMPLOYEE OF A POLITICAL SUBDIVISION THE BENEFIT OF AN ALLEGED IMMUNITY FROM LIABILITY AS PROVIDED IN CHAPTER 2744. OR ANOTHER PROVISION OF THE REVISED CODE, for prejudicial error." *Id*. at 3982.

(Am.Sub.H.B. No. 350 purported to add the phrase capitalized above to the previous version of R.C. 2501.02 in effect at that time.)

{¶ 48} The reason we use the word "purported" in the above descriptions to refer to the legislative actions contained within Am.Sub.H.B. No. 350 is that in *Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062, at paragraph three of the syllabus, this court held that "Am.Sub.H.B. No. 350 violates the one-subject provision of Section 15(D), Article II of the Ohio Constitution, and is unconstitutional *in toto*." The one-subject rule holding reflected in paragraph three of the syllabus of *Sheward* was based on an "ancillary" claim raised in that case as part of relators' attempt to have Am.Sub.H.B. No. 350 declared unconstitutional in its entirety and to have its implementation enjoined. See 86 Ohio St.3d at 452, 715 N.E.2d at 1069.

{¶ 49} In *Sheward*, this court thus struck down all legislative action contained within Am.Sub.H.B. No. 350, including the attempted enactment of R.C. 2744.02(C) and the attempted amendment of R.C. 2501.02.

{¶ 50} After the decision in *Sheward* was announced, this court issued a series of entries in cases implicating R.C. 2744.02(C), resolving them on authority of *Sheward*, and indicating that the law regarding appealability of orders denying statutory immunity to political subdivisions and employees of political subdivisions had returned to the law that existed prior to Am.Sub.H.B. No. 350's attempt to change it. See, *e.g.*, *Burger v. Cleveland Hts.* (1999), 87 Ohio St.3d 188, 718 N.E.2d 912; *Estate of Weitzel v. Cuyahoga Falls* (1999), 87 Ohio St.3d 200, 718 N.E.2d 921; *Braden v. Cleveland Bd. of Edn.* (1999), 87 Ohio St.3d 206, 718 N.E.2d 924; *Hubbard v. Canton City School Bd. of Edn.* (2000), 88 Ohio St.3d 14, 722 N.E.2d 1025.

2

Am.Sub.H.B. No. 215 and "Reenactment"

{¶ 51} In one of the cases mentioned above, *Hubbard*, two justices dissented from the entry vacating the opinion of the court of appeals for lack of a final appealable order. In the *Hubbard* dissent, the following statement was made:

"Whether the judgment of the trial court denying immunity is final and appealable depends on whether R.C. 2744.02(C) was validly reenacted by the General Assembly in Am.Sub.H.B. No. 215, given that R.C. 2744.02(C) was declared unconstitutional as being part of Am.Sub.H.B. No. 350. That is, if Am.Sub.H.B. No. 215 validly reenacted this section, then the trial court's decision denying immunity to the board of education would be final, and the jurisdiction of the court of appeals would not be questioned by this court." 88 Ohio St.3d at 15, 722 N.E.2d at 1026 (Cook, J., dissenting).

{¶ 52} Am.Sub.H.B. No. 215, effective June 30, 1997, contained an amendment to R.C. 2744.02(B)(2), which deals with the liability of political subdivisions for negligent acts by their employees with respect to proprietary functions. The sole purpose of the amendment was to insert a reference to a statute (R.C. 3314.07) that was not previously mentioned within R.C. 2744.02(B)(2). Am.Sub.H.B. No. 215 made no other changes to R.C. 2744.02.[2] 147 Ohio Laws, Part I, 1149-1150.

{¶ 53} Section 15(D), Article II of the Ohio Constitution requires that "[n]o law shall be revived or amended unless the new act contains the entire act revived, or the section or sections amended, and the section or sections amended shall be repealed."

{¶ 54} Consistent with this provision, Am.Sub.H.B. No. 215, in amending R.C. 2744.02(B)(2), reprinted the entire version of R.C. 2744.02 thought to be in existence at the time, including R.C. 2744.02(C) as purportedly enacted in Am.Sub.H.B. No. 350.

---

2. Am.Sub.H.B. No. 215 made no changes to the version of R.C. 2501.02 purportedly in effect at the time after that statute's attempted amendment by Am.Sub.H.B. No. 350.

{¶ 55} Middletown argues that, because Am.Sub.H.B. No. 215 amended R.C. 2744.02(B)(2) in compliance with the requirement of Section 15, Article II, the General Assembly thereby "enacted" an entirely new R.C. 2744.02 (including a new R.C. 2744.02[C]) in Am.Sub.H.B. No. 215. Middletown argues that, because *Sheward* found Am.Sub.H.B. No. 350 unconstitutional, and therefore the version of R.C. 2744.02(C) that the bill attempted to enact unconstitutional as well, then R.C. 2744.02(C) was never truly "enacted" until Am.Sub.H.B. No. 215 enacted the statute, because everything in Am.Sub.H.B. No. 350 was a nullity.

{¶ 56} In a related vein, Middletown argues that, pursuant to Section 15, Article II, the General Assembly's actions within Am.Sub.H.B. No. 215 should be viewed as a "repeal" in its entirety of the version of R.C. 2744.02 believed to be in effect at the time. According to this "reenactment" argument, the act therefore repealed the version of R.C. 2744.02(C) that this court found unconstitutional in *Sheward*, and replaced it with a later version of R.C. 2744.02(C) that was free of the constitutional infirmity that had caused Am.Sub.H.B. No. 350 to be struck down in *Sheward*. But, see, *Simmons-Harris v. Goff* (1999), 86 Ohio St.3d 1, 14-17, 711 N.E.2d 203, 214-216.

{¶ 57} While the reenactment argument exposes an ambiguity and is plausible on its face, serious deficiencies in the argument emerge when its specifics are considered.

3

The Intent of the General Assembly

{¶ 58} The essential goal of statutory construction is to give effect to the intent of the General Assembly. See *Carter v. Youngstown* (1946), 146 Ohio St. 203, 32 O.O. 184, 65 N.E.2d 63, paragraph one of the syllabus. The intent may be inferred from the particular wording the General Assembly has chosen to set forth the substantive terms of a statute. See *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370, paragraph five of the syllabus. Intent may also

be revealed in the procedural passage of the legislative act under consideration, when that body passes legislation that enacts, amends, or repeals a statute. See *State v. Wilson* (1997), 77 Ohio St.3d 334, 336-337, 673 N.E.2d 1347, 1350; see, also, *State ex rel. Durr v. Spiegel* (1914), 91 Ohio St. 13, 22, 109 N.E. 523, 525; *In re Hesse* (1915), 93 Ohio St. 230, 235, 112 N.E. 511, 512 (both determining intent of General Assembly by considering the way the statute at issue was amended).

**{¶ 59}** Thus, for Am.Sub.H.B. No. 215 to successfully enact or reenact R.C. 2744.02(C), the General Assembly must have intended the act to have that effect. It is readily apparent that no such intent was present. At the time Am.Sub.H.B. No. 215 was passed, the General Assembly had no reason to believe that the purported enactment of R.C. 2744.02(C), attempted a short time earlier in Am.Sub.H.B. No. 350, would later be found to be unsuccessful. It is clear that while the General Assembly intended to make a minor amendment in Am.Sub.H.B. No. 215 to R.C. 2744.02(B), the General Assembly did not intend to take any action whatsoever with regard to R.C. 2744.02(C).

**{¶ 60}** R.C. 101.53 (formerly 101.52, see 1998 H.B. No. 649, 147 Ohio Laws, Part III, 5043), provides:

"Bills shall be printed in the exact language in which they were passed, under the supervision of the clerk of the house in which they originated. New matter shall be indicated by capitalization and old matter omitted by striking through such matter. Prior capitalization in a Revised Code section shall be indicated by italicized type."

**{¶ 61}** The editor's comment in Baldwin's Ohio Revised Code Annotated to Section 15, Article II of the Ohio Constitution makes some relevant comments regarding R.C. 101.53, and indicates a relationship between that statute and Section 15(D), Article II:

"When amending a law or reviving a law previously repealed many legislative bodies include in the act only the desired amending language or words

of revivor, which can be confusing because the language does not appear in context with the law amended or revived. The General Assembly is prohibited from this practice by division (D) of this section, which also requires that the act repeal the amended section. R.C. 101.52 (now R.C. 101.53) provides devices for showing changes in context in the printed bill or act: matter to be deleted is shown struck through, and new matter to be inserted is shown in capital letters."

{¶ 62} The printing format of Am.Sub.H.B. No. 215 indicates no intent to reenact or enact R.C. 2744.02(C). R.C. 2744.02(C) appears in the printed act in regular type, without the capitalization that would indicate new material pursuant to R.C. 101.53.

{¶ 63} R.C. 1.54 provides: "A statute which is reenacted or amended is intended to be a continuation of the prior statute and not a new enactment, so far as it is the same as the prior statute." In *In re Hesse*, 93 Ohio St. at 234, 112 N.E. at 512, this court stated:

"Section 16 [now Section 15(D)], Article II of the Constitution, requires that where a law is amended, the new act shall contain the section or sections amended, and the section or sections so amended shall be repealed. In compliance with this the general assembly, when it amended [the statute at issue], did repeal the section as it existed prior thereto. It is to be remembered that the only change made in the statute was the addition of two classes of misdemeanors. The provisions contained in the act as amended which were in the original act are not considered as repealed and again reenacted, but are regarded as having been continuous and undisturbed by the amendatory act. *In re Allen* [1915], 91 Ohio St. 315 [320-321, 110 N.E. 535, 537]."

{¶ 64} In *Weil v. Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 206, 22 O.O. 205, 208, 39 N.E.2d 148, 152, this court stated:

"The courts have generally held, notwithstanding this [current Section 15(D), Article II] and similar constitutional provisions, that where an act is

amended, the part of the original act which remains unchanged is to be considered as having continued in force as the law from the time of its original enactment, and new portions as having become the law only at the time of the amendment. Black on Interpretation of Laws (2d Ed.) 579 and 582, Sections 168 and 169; 1 Sutherland Statutory Construction (2d Ed.) 441 and 445, Sections 237 and 238; *McKibben v. Lester* [1859], 9 Ohio St. 627 [1859 WL 40]; *State ex rel. McLaughlin v. City of Newark* [1894], 57 N.J.L. 298, 30 A. 543.

"The court in the last cited case says that 'by observing the constitutional form of amending a section of a statute, the Legislature does not express an intention then to enact the whole section as amended, but only an intention then to enact the change which is indicated. Any other rule of construction would surely introduce unexpected results and work great inconvenience.' " See, also, *In re Petition to Annex 320 Acres to the Village of S. Lebanon* (1992), 64 Ohio St.3d 585, 595, 597 N.E.2d 463, 470, citing *In re Allen*, 91 Ohio St. at 320-321, 110 N.E. at 537, for the proposition that "when a statute is amended the part that remains unchanged is to be considered as having continued as the law from the time of its original enactment."

{¶ 65} As the preceding discussion illustrates, Section 15(D), Article II sets out the form for the General Assembly to follow when amending a statute, but cases such as *Hesse, Allen,* and *Weil* explain the substantive significance of what is occurring, and give guidance for ascertaining the intent of the General Assembly when an amendment to a specific statute is contained within a particular act.

{¶ 66} In accordance with these precedents, it is apparent that R.C. 2744.02(C) continued forward as purportedly enacted in Am.Sub.H.B. No. 350, despite Middletown's arguments based on Section 15(D), Article II. Clearly, the General Assembly did not intend to reenact R.C. 2744.02(C) in Am.Sub.H.B. No. 215. Therefore, that act neither reenacted nor enacted R.C. 2744.02(C). When this court in *Sheward* struck down Am.Sub.H.B. No. 350, it struck down the version of

R.C. 2744.02(C) that Am.Sub.H.B. No. 350 attempted to enact, and R.C. 2744.02(C) remains invalid as a result of *Sheward*.

{¶ 67} For all the foregoing reasons, we hold that R.C. 2744.02(C), as purportedly enacted in Am.Sub.H.B. No. 350, is invalid. Furthermore, R.C. 2744.02(C) was neither enacted nor reenacted by Am.Sub.H.B. No. 215. *Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062, paragraph three of the syllabus, and *Hubbard*, 88 Ohio St.3d 14, 722 N.E.2d 1025, followed.

## III

## Conclusion

{¶ 68} Neither R.C. 2505.02(B) nor R.C. 2744.02(C) provided a valid basis for the court of appeals to exercise jurisdiction to entertain Middletown's appeal. Therefore, the court of appeals should have dismissed the appeal without reaching the merits of this case. Consequently, we vacate the decision of the court of appeals on the merits. See *Walters*, 78 Ohio St.3d at 123, 676 N.E.2d at 894. Since the court of appeals was without jurisdiction to reach the merits of the appeal, we likewise may not reach the merits.[3]

{¶ 69} Accordingly, the judgment of the court of appeals as to its jurisdiction is reversed, the judgment of the court of appeals on the merits of the appeal is vacated, and this cause is remanded to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and LUNDBERG STRATTON, J., concur separately.

MOYER, C.J., and COOK, J., concur in part.

---

3. *Haynes v. Franklin* (Sept. 25, 2000), Warren App. No. CA2000-03-025, unreported, 2000 WL 1371000, discretionary appeal and certified conflict allowed today, case Nos. 00-2004 and 00-2141, presents this court with an opportunity to address the edge-drop issue on the merits.

---

**LUNDBERG STRATTON, J., concurring.**

{¶ 70} I reluctantly concur with the determination in Part II C of the majority opinion that R.C. 2744.02(C) was neither enacted nor reenacted by 1997 Am.Sub.H.B. No. 215, because, based upon the format of the language of R.C. 2744.02 in H.B. 215, it was apparent that the General Assembly merely amended a section of the statute and did not enact or reenact a new law and repeal the old one. No one has disputed the General Assembly's authority to determine when issues involving immunity may be appealed. Had the majority in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, merely severed those sections in 1996 Am.Sub.H.B. No. 350 that violated the one-subject rule, I believe that R.C. 2744.02(C) would have remained a valid enactment.

{¶ 71} I did not agree with the majority in *Sheward* that the bill in its entirety was unconstitutional. In particular, I expressed the opinion that even if certain provisions violated the one-subject rule of the Constitution, those offending provisions should be severed without striking the entire Act. *Id*. at 539, 715 N.E.2d at 1128 (Lundberg Stratton, J., dissenting). This case presents a perfect example of the chaos resulting from *Sheward.*

{¶ 72} The General Assembly clearly intended to provide a political subdivision or an employee of a political subdivision the ability to immediately appeal from an order that denied the benefit of an alleged immunity from liability and enacted R.C. 2744.02(C) as part of H.B. 350. The city cites strong public policy in support of this law. Nevertheless, with no analysis of the constitutional viability of R.C. 2744.02(C) itself, the statute was struck down in *Sheward* merely because it was part of the overall tort reform bill.

{¶ 73} Nevertheless, I am constrained to agree that, based upon the technical requirements in the bill-making process, R.C. 2744.02(C) was neither enacted nor reenacted by H.B. 215. Therefore, I concur.

MOYER, C.J., concurs in the foregoing concurring opinion.

———————————

**COOK, J., concurring in part.**

{¶ 74} I agree with the syllabus paragraphs and with most of the majority's reasoning. I respectfully disagree, however, with two points the majority suggests and with the majority's characterization of the disposition of this case.

{¶ 75} First, the majority states that "in considering whether a particular order affected a substantial right in a special proceeding, the reviewing court's analysis first focuses on the special proceeding portion of the inquiry. Only if it is first determined that an order was entered in a special proceeding is it necessary to go on to consider whether the order affected a substantial right." To constitute a final appealable order under R.C. 2505.02(B)(2), the order at issue must be "[a]n order that affects a substantial right" and must have been "made in a special proceeding." Given that there is no statutory basis for the sequential inquiry set forth in dicta in *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 108, 616 N.E.2d 213, 218, fn. 8, and again by the majority today, and given that the failure of either prong of the two-part inquiry would yield a resolution regarding appealability, I conclude that a reviewing court may address either the substantial right inquiry or the special proceeding inquiry first.

{¶ 76} Second, in holding that this case involves an ordinary civil action for damages and not a special proceeding, the majority refers to the headings to R.C. Chapter 2125 contained in both Baldwin's Ohio Revised Code Annotated and Page's Ohio Revised Code Annotated. But R.C. 1.01 provides that "Title, Chapter, and section headings and marginal General Code section numbers do not constitute any part of the law as contained in the 'Revised Code.' " One member of this court has explained the character of such headings as follows:

"[H]eadings are publisher's aids to the user of the code. [They are not] part of the code; [they are not] official. 'In Ohio, the General Assembly does not assign

official Revised Code headings, or taglines; they are written by the Publisher's editorial staff.' Baldwin's Ohio Legislative Service (1994), User's Guide, 4. 'Where new sections have been added to the Revised Code without official headings, descriptive headings have been supplied by the publisher's editorial staff.' Page's Revised Code Annotated (1990), Preface, vi." *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.* (1994), 70 Ohio St.3d 281, 286, 638 N.E.2d 991, 995, fn. 1 (Resnick, J., concurring).

{¶ 77} Therefore, I decline to join this cumulative point of analysis.

{¶ 78} Finally, the procedural disposition of this case is redundant. The majority reverses the court of appeals' determination of its jurisdiction, vacates its order as to the merits of the underlying appeal, and remands the cause to the trial court for further proceedings. This court has in the past most often merely vacated courts of appeals' orders when no final appealable order exists. See, *e.g.*, *Walters v. The Enrichment Ctr. of Wishing Well, Inc.* (1997), 78 Ohio St.3d 118, 676 N.E.2d 890; *Hitchings v. Weese* (1997), 77 Ohio St.3d 390, 674 N.E.2d 688; *State v. Lambert* (1994), 69 Ohio St.3d 356, 632 N.E.2d 511; *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353. This is so because by vacating for want of jurisdiction the judgment of the court of appeals, we implicitly overturn that court's determination regarding its jurisdiction. Therefore, I believe that the correct disposition of this case is simply to vacate the judgment of the court of appeals and to remand this cause to the trial court for further proceedings.

{¶ 79} Accordingly, with the exception of the three foregoing points, I concur in the majority's reasoning and consequent disposition of this cause.

MOYER, C.J., concurs in the foregoing opinion.

―――――――――

*Ted L. Wills, Howard M. Schwartz* and *Marc D. Mezibov*, for appellant.

*Robert J. Gehring* and *Leslie S. Landen,* Middletown Law Director, for appellee.

*Arthur, O'Neil, Mertz & Bates Co., L.P.A.,* and *Joseph W. O'Neil,* urging reversal for *amicus curiae* Ohio Academy of Trial Lawyers.

*John E. Gotherman, Barry M. Byron* and *Stephen L. Byron*, urging affirmance for *amicus curiae* Ohio Municipal League.

*Isaac, Brant, Ledman & Teetor, Mark Landes* and *Paul A. Mackenzie*, urging affirmance for *amici curiae* County Commissioners' Association of Ohio and County Engineers' Association of Ohio.

_____