DECISION.
{¶ 1} This case presents two consolidated appeals. In the appeal numbered C-020818, the plaintiffs below, Eric, Raymond, and Darlene Meece, challenge the order of the trial court granting summary judgment to American Foreign Insurance Company, the defendant-appellee, on their Scott-Pontzer claim for uninsured motorists (UM) coverage under a commercial automobile policy issued to Raymond Meece's employer, The Cincinnati Gear Company. In the appeal numbered C-030088, State Farm Mutual Automobile Insurance Company challenges the order of the trial court granting summary judgment to the Meeces on the issue of whether the three policies issued by State Farm to the Meece family could be "stacked" for the purpose of recovering UM benefits under all three policies.
 {¶ 2} Based upon the Ohio Supreme Court's decision in WestfieldIns. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 256, we affirm the trial court's judgment in the appeal numbered C-020818.
 {¶ 3} In the appeal numbered C-030088, we reverse the judgment based upon the syllabus law of Marshall v. Aaron (1984), 15 Ohio St.3d 48,472 N.E.2d 335.
 Background {¶ 4} Eric Meece was seriously injured in April of 1995 while he was a passenger in an automobile owned by Jamie McCollister and driven by Josh McCollister. Though the accident was allegedly caused by Josh's negligence, neither he nor the automobile he was driving was insured at the time of the accident. The parties apparently do not dispute that the McCollisters were, and still are, judgment-proof.
 {¶ 5} Eric Meece asserted claims for UM benefits under three policies issued to the Meece household by State Farm. One of the policies was issued to his father, Raymond, and had UM coverage limits of $100,000 for "each person" and $300,000 for "each accident"; the second policy was issued to both Raymond and Darlene, his mother, and had identical UM coverage limits; and the third policy was issued to his brother, Raymond II, and had UM coverage limits of $50,000 for "each person" and $100,000 for "each accident."
 {¶ 6} State Farm did not contest that Eric Meece was entitled to UM benefits — but it did dispute that he could claim such benefits under all three policies, or "stack" the policies as that term is used. State Farm paid Eric Meece $100,000 in benefits with an express reservation of its right to litigate the issue of whether the other two policies could be "stacked."
 {¶ 7} The Meeces filed suit against State Farm on April 2, 1997, to resolve the stacking issue. The trial court granted summary judgment to State Farm based upon its interpretation of R.C. 3937.18 as amended. This court affirmed the judgment in Meece v. State Farm Mut. Auto. Ins. Co.
(Oct. 13, 1999), 1st Dist. No. C-980739. The Ohio Supreme Court, however, reversed our decision on the basis of its decision in Wolfe v.Wolfe (2000), 88 Ohio St.3d 246, 725 N.E.2d 261, holding that the amendment to R.C. 3937.18 applied only to policies issued after the effective date of Senate Bill 20, or to policies that had a new, two-year guarantee period that had begun after the amended statute had been enacted. Meece v. State Farm Mut. Auto. Ins. Co. (2000), 88 Ohio St.3d 547,728 N.E.2d 370.
 {¶ 8} On remand to the trial court, the Meeces added as a defendant the American Foreign Insurance Company, against whom they asserted a claim for UM coverage under the Ohio Supreme Court's intervening decision in Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, 710 N.E.2d 1116. On August 27, 2001, State Farm filed a second motion for summary judgment on the issue of stacking, this time asserting that it was entitled to limit the Meeces' recovery to the UM limits of a single intrafamily policy even under the law that existed prior to Senate Bill 20. On April 29, 2002, American Foreign Insurance Company also filed a motion for summary judgment, asserting that the holding of Scott-Pontzer did not apply to its commercial automobile policy with The Cincinnati Gear Company.
 {¶ 9} On September 19, 2002, the Meeces filed their response to State Farm's motion for summary judgment. As will be later discussed more fully, although both the Meeces and State Farm refer to this response as a cross-motion for summary judgment, the response is not styled as such, and it states in its preamble only that State Farm's motion for summary judgment should be denied because "there are issues of material fact and questions of law."
 {¶ 10} Also on September 19, 2002, the Meeces filed a "combined motion for summary judgment and memorandum in opposition" to American Foreign Insurance Company's motion for summary judgment, arguing that Scott-Pontzer and its progeny did apply to the company's commercial automobile policy with The Cincinnati Gear Company.
 {¶ 11} On November 21, 2002, the trial court entered an order "granting [the Meeces'] motion for summary judgment against State Farm" and overruling State Farm's motion for summary judgment. On that same date, in a separate entry, the trial court granted American Foreign Insurance Company's motion for summary judgment against the Meeces and denied the Meeces' motion for summary judgment against the same company.
 STATE FARM APPEAL NO. C-030088 {¶ 12} State Farm argues in its two assignments of error that the trial court erred by ruling that the UM coverage of its three policies issued to the Meece household could be stacked, and by "failing and/or refusing to rule on the effect of the existence of the `Scott Pontzer' policy issued" by the American Foreign Insurance Company. We turn, however, to a more fundamental preliminary question: whether the trial court had the authority to grant summary judgment to the Meeces on the issue of stacking when we can find nothing in the record to indicate that they ever moved for such relief under Civ.R. 56(E).
 {¶ 13} As we have noted, both the Meeces and State Farm have taken the position for the purposes of this appeal that the Meeces responded to State Farm's motion for summary judgment on the issue of stacking by filing a cross-motion for identical relief. However, the filing to which both parties refer[1] is not captioned a cross-motion, but merely a response, and states in the preamble only that State Farm's motion should be denied because questions of material fact and law remain. The memorandum in support of the response adopts the same argument — that summary judgment is improper because of unresolved factual issues. Nowhere in the conclusion section of the memorandum do the Meeces ever request summary judgment in their favor.
 {¶ 14} We raise this issue not for the purpose of being overly technical or picayune. In Marshall v. Aaron, supra, the Ohio Supreme Court expressly held that it was reversible error for the trial court to grant summary judgment in the absence of a motion for such relief. The court interpreted the language of Civ.R. 56(C) as requiring a motion with evidence and stipulations attached as a necessary precondition to the court granting summary judgment, thus precluding a court from sua sponte granting such relief. Id. at 50, 472 N.E.2d 335.
 {¶ 15} Concededly, the court in Aaron was concerned with a lack of notice to the opposing party and of the opportunity to demonstrate the existence of a genuine issue of fact. Here, State Farm, by earlier filing its own motion for summary judgment, had already briefed the issues. Were not the holding of Aaron and the syllabus law of the case so unequivocal, we might agree that this case should be distinguished. But the court in Aaron expressly stated, "Although Civ.R. 56(C) does not expressly so state, we rule that a party who has not moved for summary judgment is not entitled to such an order * * *." Id. Elsewhere, the court states its holding categorically, "For the following reasons, we hold that Civ.R. 56 does not authorize courts to enter summary judgment in favor of a party who has not moved therefore." Id. at 51,472 N.E.2d 335. The syllabus of the court is no less absolute: "Civ.R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party." Id. at syllabus.
 {¶ 16} Because the trial court in this case had no authority to grant summary judgment to the Meeces, we have no choice but to reverse the trial court. While State Farm has appealed the trial court's order both granting summary judgment to the Meeces and denying it the same relief, it is well settled that "[t]he denial of a motion for summary judgment generally is considered an interlocutory order not subject to immediate appeal. See Stevens v. Ackman, 91 Ohio St.3d 182, 186,2001-Ohio-249, 743 N.E.2d 901. Although this court has, in the past, deemed it appropriate in the case of cross-motions for summary judgment to address the assignment of error in both aspects (i.e., the overruling of the appellant's motion for summary judgment along with the granting of the appellee's motion), see Lehman v. Cincinnati (Mar. 7, 1984), 1st Dist. No. C-830382, we do not deem it appropriate here, where, in fact, the appellees never made a motion for summary judgment.
 {¶ 17} State Farm's second assignment is predicated upon the applicability of Scott-Pontzer coverage. As we discuss infra, however,Scott-Ponzer coverage does not exist in this case under the recent Ohio Supreme Court decision in Galatis, supra, and therefore this assignment fails in its premise.
 {¶ 18} Accordingly, based upon the syllabus law of Aaron, supra, we must reverse the entry of summary judgment for the Meeces on the issue of stacking and remand this case to the trial court for further proceedings.
 MEECES' APPEAL NO. C-020818 {¶ 19} On the earlier remand of this case to the trial court, the Meeces added a Scott-Pontzer claim against the American Foreign Insurance Company. In Scott-Pontzer, the Ohio Supreme Court interpreted the standard corporate automobile UM/UIM coverage as extending to the corporation's employees. Scott-Pontzer, supra. Furthermore, in Ezawa v.Yasuda Fire Marine Ins. Co., 86 Ohio St.3d 557, 1999-Ohio-124,715 N.E.2d 1142, the court expanded the scope of the coverage beyond the corporation's employees to members of the employees' families. The rationale was that when the contract of insurance with the business corporation used only the word "you" and nothing else to define the word "insured," "you" referred not to the corporate entity to whom the policy was issued, but to some person or persons, including the corporation's employees and their family members.
 {¶ 20} While this appeal was pending, however, the court inGalatis, supra, acknowledged the fallacy inherent in its judicial extension of UM/UIM coverage under a commercial automobile policy to include coverage that had absolutely no connection to the business itself. Citing cases from other jurisdictions that had used words such as "mysterious" and "preposterous" to describe the holdings inScott-Pontzer and Ezawa, the court acknowledged that under no sane analysis could the corporate insured have ever intended to contract for coverage against risks that had nothing to do with its commercial enterprise. Galatis, supra, at ¶ 39. Such a construction as it had imposed, the court acknowledged, constituted a remaking of the insurance contract and violated both state and federal constitutional provisions protecting the freedom of contract. Id.
 {¶ 21} The court in Galatis therefore limited its earlier holdings so that "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope ofemployment." Id., paragraph two of the syllabus (emphasis supplied). In so doing, the court acknowledged that Scott-Pontzer had "ignored the intent of the parties" because, unless indicated otherwise in the policy, "it is doubtful that either an insurer or a corporate policy holder ever conceived of contracting for coverage for off-duty employees occupying noncovered autos, let alone the family members of the employees." Id. at ¶ 39. Moreover, the court noted thatScott-Pontzer and its progeny had defied "practical workability." Id. at ¶ 50. As stated by the court, "The multitude of post-Scott-Pontzer
issues before this court, the widespread criticism of the decision from other jurisdictions, and the numerous conflicts emanating from the lower courts indicate that the decision muddied the waters of insurance coverage litigation, converted simple liability suits into complex multiparty litigation, and created massive and widespread confusion — the antithesis of what a decision of this court should do." Id.
 {¶ 22} Significantly, the court rejected the argument that those who may have benefited from the Scott-Pontzer largesse could claim any reliance interest sufficient to maintain its viability. Id. at ¶ 59. As the court noted, "The overwhelming majority of Scott-Pontzer cases are resurrected claims from the years prior to the Scott-Pontzer decision," thus precluding any claim of reliance. Id. This is exactly the situation here, where the unfortunate accident that led to Eric Meece's injuries occurred well before Scott-Pontzer and its progeny made a claim against American Foreign Insurance Company even remotely conceivable.
 {¶ 23} Based upon the holding of Galatis, therefore, we hold that the trial court did not err in granting summary judgment to the American Foreign Insurance Company. Nothing in the record supports the conclusion that the injury to Eric Meece, who was not an employee of The Cincinnati Gear Company, occurred within the scope of anything that could even be remotely argued was employment with his father's company, nor do we perceive any question of fact, let alone material fact, as to this issue created by the record.
 {¶ 24} The Meeces' assignment of error is, therefore, overruled, and the judgment entered by the trial court against them is affirmed.
Judgment accordingly.
Sundermann, P.J., Gorman and Winkler, JJ.
[1] The filing is found at t.d. 45. The Meeces had previously filed a motion for summary judgment against State Farm on July 23, 1998, when the case was first before the trial court. However, as discussed in the text, when State Farm filed a second motion for summary judgment on remand, the Meeces responded not by renewing their earlier motion, but, rather, by arguing that genuine issues of material fact remained on the issue of stacking. T.d. 45. The court's judgment entry granting the Meeces summary judgment does not reflect that it did so on the basis of a renewal of their earlier motion. On this record, therefore, the only position taken by the Meeces on remand was that "additional facts are necessary to resolve [the stacking] issue."