Matthias, J.
 

 The rejection of the claim for unemployment compensation by the board of review was based upon its conclusion that the city of Youngstown was not an “employer” within the scope of the Ohio Unemployment Compensation Act, being Section 1345-1
 
 et seq.,
 
 General Code.
 

 It may bo noted at the outset that, although the “Division of Water” was designated as the employer and thus appears in the caption of the claim as filed, appropriate amendment was thereafter made, and throughout the proceeding the city of Youngstown has been regarded as the employer of the claimant.
 

 The precise question presented is whether the city of Youngstown was liable as an employer under the Ohio Unemployment Compensation Act.
 

 To be entitled to any unemployment benefits, it is essential that a claimant shall have been “employed by an employer (or employers) subject to this act in at least twenty calendar weeks within his base period.” Section 1345-6
 
 a
 
 (1), General Code.
 

 
 *205
 
 Whether the city of Youngstown was an employer subject to the act must be determined from the provisions of Section 1345-1, subdivisions 5 (1), and c
 
 (.E)
 
 (4) [now D (3)] General Code, the pertinent portions of which follow:
 

 (The statutory provisions as quoted are as they now • exist, but are in no material respect different from such provisions as in force when the claim in question is alleged to have accrued.)
 

 “ ‘Employer’ means any individual or type of organization including any partnership, association, trust, estate, joint stock company, insurance company, or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee, or the successor thereof, or the legal representative of a deceased person who (which)-subsequent to December 31,1936, had in employment three or more individuals at any one time within a calendar year * * *. [Section 1345-1
 
 b
 
 (1).]
 

 ‘ ‘ The term employment shall not include: * * * Service performed in the employ of any governmental unit, municipal or public corporation, political subdivision, or instrumentality of the United States or of one or more states or political subdivisions in the exercise of purely governmental functions * * Section 1345-1
 
 o D
 
 (3).
 

 Section 1345-1
 
 c,
 
 General'Code, defines the word “employment” to mean “service performed for wages under any contract of hire, written or oral, express or implied. ’ ’
 

 Section 1345-4, General Code, requires contributions to be made “by each employer for each calendar year or other period as prescribed by this act in which he is subject to this act.”
 

 Section 1345-34, General Code, provides in part as follows:
 

 ‘ ‘ This act is enacted as a part of a national plan of unemployment compensation and social security, and
 
 *206
 
 for the purpose of assisting in the stabilization of employment conditions. The imposition of the contributions herein imposed upon Ohio industry alone without a corresponding tax imposed upon all industry in the United States would [,] by the penalty upon Ohio industry, defeat the purposes of this act. Therefore, this act shall remain in effect only so long as the excise tax upon employers of eight or more persons which is imposed by Title IX [Title 42, Sections 1101 to 1110, U. S. Code] of the Social Security Act enacted by the Congress of the United States shall remain and be in effect and operative.”
 

 The issue made by the parties hereto presents the specific questions, (1) whether the definition of “employer” in Section 1345-1, General Code, includes a municipal corporation, and (2) if it is so included, whether the subsequent provision therein that “The term employment shall not include * * * Service performed in the employ of any governmental unit, municipal or public corporation, political subdivision, or. instrumentality of the United States or of one or more states or political subdivisions in the exercise of purely governmental functions,” expressly excludes employees, of a municipality from the operation of the unemployment compensation statutes, regardless of whether such service is performed for the municipality in a governmental or in a proprietary capacity.
 

 Persuasive argument is made upon the proposition that the word “corporation” as used in Section 1345-1
 
 b
 
 (1), General Code, means only private corporations, and it is urged that the use of the phrase “corporation, whether domestic or foreign” in itself serves to exclude municipal corporations which of course are neither domestic nor foreign.
 

 It must be conceded, however, that the clause, “any individual or type of organization” is all-inclusive in •its scope, and it therefore cannot reasonably be argued
 
 *207
 
 that municipal corporations are not embraced within that broad definition. Yet when the entire act is read and all its provisions construed together, which must be done, it is clear that all organizations are not intended to be brought within the operation of the act.
 

 In order to ascertain with definiteness and certainty who is an employer within the purview of the act, we must also determine the meaning of the word ‘ ‘ employment” as defined in Section 1345-1, General Code. It is to be observed that many kinds of labor and services are specifically excluded from the term ‘ ‘ employment ’ ’ as defined in the act, such as agricultural labor, domestic service, services performed for private or parochial schools or in the employ of religious or charitable institutions,, and many others therein enumerated which, but for such specific exclusion, necessarily would be held to be employment as broadly defined.
 

 We are here particularly concerned with the provisions of Section 1345-1 cl) (3), General Code, for, from a consideration and analysis thereof, it must be determined whether employees of municipalities whose services are either proprietary or governmental in character are within the act and whether municipalities are consequently required to make contributions to the unemployment compensation fund of the state.
 

 In the construction of statutes the purpose in every instance is to ascertain and give effect to the legislative intent, and it is well settled that none of the language employed therein should be disregarded, and that all of the terms used should be given their usual and ordinary meaning and signification except where the lawmaking body has indicated that the language is not so used. It is to be observed that in the provision under consideration it is first specified that the term ‘ ‘ employment” shall not include service performed in the employ of any governmental unit, then, separated by commas 'indicating an enumeration of governmental units,
 
 *208
 
 there follow the terms “municipal or public corpora- _ tion, political subdivision.” This is followed by what is obviously set apart as an additional specification of exemption, that being “instrumentality of the United States or of one or more states or political subdivisions in the exercise of purely governmental functions.”
 

 It seems perfectly clear that all services performed in the employ of any municipal corporation or political subdivision are excluded from the term “employment” unless such exclusion is curtailed or limited'by the last phrase, to. wit, “in the exercise of purely governmental functions.” It seems obvious, too, that if it had been the intent of the General Assembly to exclude from the term “employment” the services performed for all political subdivisions only when they were in the exercise of purely governmental functions, the preceding phrase, “municipal or public corporation, political subdivision,” would have been entirely omitted, for no meaning could be ascribed to it and it would serve no purpose whatever. To peremptorily discard an entire phrase would be violative of one of the elementary rules of statutory construction. The intention of the legislative body in this respect is, therefore, shown by the repeated use of the term “political subdivision”; first in the phrase wherein a complete exemption is declared, and later in the phrase providing for a limited exemption of “instrumentalities.”
 

 As we view these statutes, the various provisions may be reconciled and brought into harmony without either discarding any of the language used or inserting any additional language. Obviously the term “instrumentality” was used by the legislative body to designate a type of organization which did not fall within the descriptive term of either of the units or types of organization previously designated. So-called “instrumentalities” had theretofore been created, some by
 
 *209
 
 the state and many by the national government; hence when it came to making an exemption of employment constituting service rendered to an “instrumentality,” such exemption was expressly limited to service rendered by such “instrumentality * * * in the exercise of purely governmental functions.”
 

 The rule of construction in substance that referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent, is applicable and persuasive. See 2 Sutherland on Statutory Construction (3 Ed.), 448, Section 4921.
 

 It is proper in the construction of statutes to examine other statutory provisions of a kindred character, particularly in respect to the meaning of language employed in the definition of terms. It is to be observed where the provisions of acts of the Legislature such as this are to apply to municipalities, the General Assembly has so stated in clear and concise language. It is significant that in the enactment of the Workmen’s Compensation Act, which was long prior to the passage of the Unemployment Compensation Act, the General Assembly, in Section 1465-60, General Code, designates as employers subject to the provisions of the act “the state and each county, city, .township, incorporated village and school district therein.” Likewise, Section 1465-61, General Code, expressly includes as employees persons “in the service of the state, or of any county, city, township, incorporated village or school district therein,” and Section 1465-63, General Code, requires contribution by the state and the several subdivisions enumerated to the workmen’s compensation fund, the amount in each instance to be determined as therein specified.
 

 A liberal construction of the Unemployment Compensation Act is enjoined to accomplish the purpose thereof which is to require unemployment compensation to be paid to employees who are within the scope
 
 *210
 
 of the act, and to secure to them the rights and benefits conferred thereby; but in ascertaining’ and determining whether municipalities are liable as contributors to the fund we are dealing with a provision which is akin to a taxing statute, as is clearly shown by Section 1345-34, General Code,
 
 supra,
 
 and it is .well settled that language employed in. a taxation' statute will not be extended' by implication beyond its clear import or enlarged so as to embrace purposes or objects not specified or clearly included in its terms.
 

 It is our conclusion that service performed by an employee of a municipal waterworks does not constitute “employment” as defined in general terms in Section .1345-1 c, General Code, and modified by the subsequent provisions thereof which specially exempt “service performed in the employ of any governmental unit, municipal or public corporation, political subdivision, or instrumentality of the United States or óf one or more states or political subdivisions in the exercise of purely governmental functions;” and further that municipal corporations are not employers and the claimant herein is not an employee within
 
 the
 
 scope of the Unemployment Compensation Act.
 

 It follows that the judgment of the Court of Appeals is reversed.
 

 Judgment reversed.
 

 Williams, Turner and Hart, JJ., concur.
 

 Weygandt, C. J., Zimmerman and Bell, JJ., dissent.