DECISION AND JUDGMENT ENTRY
{¶ 1} In this appeal, numbered WD-03-28, the Wood County Court of Common Pleas granted summary judgment to appellee, Vaughn Industries, Inc. ("Vaughn") and denied the motion of appellant, the International Brotherhood of Electrical Workers, Local Union No. 8 ("IBEW") for summary judgment. In a second appeal, numbered
 {¶ 2} WD-03-048, Vaughn claims that the trial court abused its discretion in denying its motion for attorney's fees made pursuant to R.C. 4115.16(D). Because these issues make joinder on appeal practicable, we hereby consolidate these two appeals under the number
 {¶ 3} WD-03-048. See App.R. 3(B).
 {¶ 4} From 1997 to 2000, Vaughn, a private construction contractor in the electrical, mechanical, and high voltage industry performed work on two public projects located at Bowling Green State University in Wood County, Ohio. These projects were known as the Psychology Building Project and the Electrical Distribution System Project.
 {¶ 5} IBEW is a labor organization that represents over 2,000 electrical workers in northwest Ohio and southeast Michigan. On March 19, 2001, IBEW filed, pursuant to R.C. 4115.16(A), two complaints (one for each of the projects) with the Administrator of the Bureau of Employment Services. The administrative complaints were supported by the two identical affidavits of Dennis C. Duffey, Business Manager of IBEW.
 {¶ 6} A brief description of Ohio's Prevailing Wage Law and its purpose is necessary before proceeding any further in our statement of the case/facts of this cause.
 {¶ 7} Ohio's Prevailing Wage Law, R.C. 4115.03 to 4115.16, "* * * evidences a legislative intent to provide a comprehensive uniform framework for, inter alia, worker rights and remedies vis-a-vis private contractors, sub-contractors and materialmen engaged in the construction of public improvements in this state. Above all else, the primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector." State ex rel. Evans v. Moore (1982),69 Ohio St.2d 88, 91.
 {¶ 8} R.C. 4115.16(A) allows an "interested party," such as a labor union whose members worked for a contractor or subcontractor on a public project, see R.C. 4115.03(F), to file a complaint with the Administrator of the Bureau of Employment Services alleging a violation or violations of R.C. 4115.03 to4115.16. The administrator must then commence an investigation of the alleged violation(s). R.C. 4115.13. *Page 647 
 {¶ 9} However, if the administrator fails to rule on the merits of the complaint within 60 days, R.C. 4115.16(B) provides that "the interested party may file a complaint in the court of common pleas of the county in which the alleged violation occurred." The interested party must provide a copy of the civil complaint to the administrator. R.C. 4115.16(B). At that point, the administrator is required to cease his or her investigation. Id. Any subsequent decision by a court of common pleas has the same effect as a like determination by the administrator. Id.
 {¶ 10} In the case under consideration, the administrator failed to rule on the merits of the IBEW's complaints within 60 days. Therefore, IBEW filed a civil action in the Wood County Court of Common Pleas. In Count One of its complaint, IBEW alleged that Vaughn violated various provisions of R.C. 4115.03
to 4115.16 while working on the Psychology Building Project.
 {¶ 11} Specifically, IBEW asserted that Vaughn intentionally failed (1) to pay its employees the prevailing rate of wages; (2) to furnish each employee not covered by a collective bargaining agreement or understanding between an employer and a labor union "with written notification of the job classification, separated into hourly rate of pay and fringe payments, and the identity of the prevailing wage coordinator appointed by the public authority pursuant to R.C. 4115.05;" (3) to strictly comply with the wage provisions of a contract executed between Vaughn and the public authority, that is, Bowling Green State University, by failing to pay a rate of wages not less than the rate fixed in the contract, see R.C. 4115.06; (4) to conform with R.C. 4115.07 by posting, in a prominent and accessible place on the work site, a legible statement of the schedule of wage rates specified in the contract for various classifications of laborers, workers and mechanics; (5) to prepare certified payroll reports enumerating each employee's fringe benefit payments as required by R.C.4115.071(C); (6) to compensate its electricians at a rate not less than the fixed prevailing rate of wages applicable for such work in Wood County in violation of R.C. 4115.10. In Count Two of its complaint, IBEW made the same allegations against Vaughn with regard to the Electrical Distribution System Project.
 {¶ 12} Vaughn answered the complaint and set forth a defense of lack of subject matter jurisdiction over all claims in Count One of the complaint. Vaughn also maintained that, except for the claim that a prevailing wage was not paid to the employees who worked on the Electrical Distribution System Project, the trial court lacked subject matter jurisdiction over the remainder of the claims in Count Two.
 {¶ 13} Vaughn based this defense on the fact that the form used in filing an administrative complaint with the Bureau of Employment Services has a section captioned "REASON FOR FILING COMPLAINT." This section contains five *Page 648 
boxes; each box has a different area covered by R.C. Chapter 4115 as a label. These are "Prevailing wage not paid," "Fringe benefits not paid," "Misclassifications," "Wages not paid," and "Overtime." On the complaint involving the Psychology Building Project, none of these boxes is checked. On the complaint concerning the Electrical Distribution System Project, only the "Prevailing wage not paid" box is checked.
 {¶ 14} According to Vaughn, the administrative complaints did not comply with R.C. 4115.03 to R.C. 4115.16 because they failed to allege a violation or violations (except for the failure to pay the prevailing wage) of that chapter. Therefore, Vaughn concluded that because the administrator could not render a determination as to those allegations, the trial court lacked jurisdiction over the allegations listed in the civil complaint.
 {¶ 15} Vaughn subsequently filed a motion for summary judgment, arguing, inter alia, that due to the defective administrative complaints, the common pleas court lacked jurisdiction over all of IBEW'S claims except the "prevailing wage not paid claim" that pertained to the Electrical Distribution System Project. In the alternative, Vaughn asserted that IBEW failed to offer facts sufficient to create a genuine issue of material fact on any of its claims.
 {¶ 16} IBEW filed a memorandum in opposition to Vaughn's motion for summary judgment and its own motion for summary judgment. In its motion, IBEW abandoned all but three of the claims involving alleged violations of R.C. 4115.03 to 4115.16. These are (1) failure to provide the employees working on the named projects with individual written notice of the identity of the prevailing wage coordinator assigned to oversee compliance with R.C. 4115.05; (2) failure to comply with R.C. 4115.071(C)(1) by willfully failing to submit a certified payroll to the prevailing wage coordinator that exhibited, among other things, fringe benefits; and (3) "the gross underpayment of the total prevailing wage package prescribed by law."
 {¶ 17} On February 3, 2003, the trial court entered a judgment in which it granted Vaughn's motion for summary judgment and denied IBEW's motion for summary judgment. The court concluded that, under R.C. 4115.16(C), the Ohio Rules of Civil Procedure are applicable to administrative proceedings instituted pursuant to R.C. 4115.16(A). Therefore, the trial judge found that Civ.R. 8 applied to the complaint filed with the Administrator of the Bureau of Employment Services. Because IBEW's administrative complaint raising issues involving the Psychology Building Project did not have any of the five boxes checked, the judge found that the complaint did not comply with the rules of pleading set forth in Civ.R. 8(A). Thus, the lower court decided that it lacked "subject matter jurisdiction" over all of the claims raised in Count One of IBEW's civil action. *Page 649 
 {¶ 18} For the same reasons, the court determined that it lacked subject matter jurisdiction over all but one of the claims raised in Count Two of IBEW's civil complaint. Consequently, the court below addressed only the claim that Vaughn failed to pay the prevailing wage on the Electrical Distribution System Project. In determining whether Vaughn failed to pay its employees the prevailing wage on that project, the court adopted the method of calculating a fringe benefits credit espoused by Vaughn and found that Vaughn correctly calculated its fringe benefit credit. The trial judge therefore granted summary judgment to Vaughn on this question and denied IBEW's motion for summary judgment.
 {¶ 19} After the trial court entered its judgment on the merits, Vaughn filed its motion for attorney's fees pursuant to R.C. 4115.16(D). The trial court denied that motion and Vaughn filed a separate appeal from that decision.
 {¶ 20} IBEW appeals and asserts that the following errors occurred in the proceedings below:
 {¶ 21} "1. The trial court committed reversible error when it held that it lacked subject matter jurisdiction over certain of IBEW Local 8's claims brought under R.C. 4115.16(B).
 {¶ 22} "2. The trial court committed reversible error when it held that the rules of civil procedure apply to and must be complied with when filing an administrative complaint with the Director of Commerce under R.C. 4115.16(B).
 {¶ 23} "3. The trial court committed reversible error by refusing to interpret O.A.C. 4101:9-4-06 to require that fringe benefits credit be calculated based on the actual cost-per-hour per employee.
 {¶ 24} "4. The trial court committed reversible error when it held that defendant/appellee Vaughn Industries correctly calculated its hourly fringe benefits credit because Vaughn never submitted any such calculations, nor any evidence that it did so calculate them, or how they were calculated.
 {¶ 25} "5. The trial court committed reversible error when it refused to find that defendant/appellee Vaughn Industries violated R.C. 4115.10 by paying its employees less than the prevailing wage rate.
 {¶ 26} "6. The trial court committed reversible error when it refused to find that defendant/appellee Vaughn Industries violated R.C. 4115.05 by failing to provide its employees individual written notification of the identity of the prevailing wage coordinator.
 {¶ 27} "7. The trial court committed reversible error when it refused to find that defendant/appellee Vaughn Industries violated R.C. 4115.4115.071(C) and O.A.C.O.A.C. *Page 650 4101:9-4-06(B) by failing to disclose the hourly rate of any fringe benefit payments or credits on its certified payroll reports."
 {¶ 28} Vaughn raises the following assignment of error:
 {¶ 29} "The trial court committed reversible error when it failed to award attorney's fees to Defendant-Appellant, Vaughn Industries, Inc., pursuant to R.C. 4115.16(D)"
 {¶ 30} The standard applicable to our review of IBEW's assignments is de novo. See Doe v. Shaffer (2000),90 Ohio St.3d 388, 390. Thus, we must ascertain whether the grant of summary judgment to Vaughn is appropriate because (1) there is no genuine issue of material fact; (2) reasonable minds can come to but one conclusion, and that conclusion is adverse to IBEW, which is entitled to have the evidence construed most strongly in its favor; and (3) Vaughn is entitled to judgment as a matter of law. Civ.R. 56(C); Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. This same standard is also applicable to the common pleas court's denial of IBEW's motion for summary judgment.
 {¶ 31} IBEW's first assignment of error contends that the trial court erred in finding that it lacked subject matter jurisdiction over most of its claims. We agree.
 {¶ 32} A court's subject matter jurisdiction comprehends the court's authority to hear and determine the claims for relief involved in an action and to grant the relief requested. BCLEnterprises, Inc., Appellee v. Ohio Dept. of Liquor Control
(1997), 77 Ohio St.3d 467, 469. The subject matter jurisdiction of the courts of common pleas and its divisions is determined by statute. Section 4(B), Article IV, Ohio Constitution.
 {¶ 33} As applied to the case before us, R.C. 4115.16((B) expressly states that if the administrator does not rule on the merits of a complaint within 60 days, "the interested party may file a complaint in the court of common pleas of the county in which the violation is alleged to have occurred." The common pleas court then has the authority to "hear and decide the case." Id. Its decision on the merits "shall have the same consequences as a like determination by the administrator." Id. Thus, the statute plainly and unambiguously confers subject matter jurisdiction on the Wood County Common Pleas Court to hear and decide all matters raised in IBEW's civil action. Accordingly, IBEW's first assignment of error is found well-taken.
 {¶ 34} In its second assignment of error, IBEW maintains that the trial court erred in finding that the Ohio Rules of Civil Procedure, in particular, Civ.R. 8(A), apply to the proceedings before the administrator. As noted infra, the *Page 651 
common pleas court determined that it lacked subject matter jurisdiction over most of IBEW's claims in the civil action. This finding was predicated on the fact that IBEW's administrative complaint did not substantially comply with Civ.R. 8(A) in that the union did not set forth all of the claims for relief in the administrative complaint that it alleged in its subsequent civil complaint.
 {¶ 35} Generally, unless specific statutes or rules require their application in an administrative proceeding, the Ohio Rules of Civil Procedure apply only to court proceedings. Moffett v.Salem City School Dist. Bd., 7th Dist. No. 2003 CO 7,2003-Ohio-7007 at ¶ 24 (citations omitted). Therefore, in the case under consideration, we must determine whether the trial court erred in finding that R.C. 4115.16 requires the application of the Ohio Rules of Civil Procedure in its administrative proceedings.
 {¶ 36} The trial court relied on R.C. 4115.16(C) for its finding. For the following reasons we conclude that the lower court's construction of this statute is incorrect. In doing so, we note that our review of the common pleas court's construction of R.C. 4115.16 is also de novo because statutory construction is a matter of law. Akron v. Frazier (2001), 142 Ohio App.3d 718,721.
 {¶ 37} R.C. 4115.16(A) and 4115.16(B) make available three remedies for interested parties seeking to enforce the statutes governing prevailing wage law. First, the complainant may, pursuant to R.C. 4115.16(A), commence an administrative proceeding. R.C. 4115.16 (A) does not refer to this proceeding as an "action." Second, the complainant may appeal the decision of the administrator to the common pleas court in the county where the alleged violation(s) occurred. R.C. 4115.16(B). Third, if the administrator fails to rule on the merits of the administrative complaint within 60 days, the complainant may file a civil action in the common pleas court where any alleged violation(s) occurred. Id. R.C. 4115.16(B) specifically refers to the civil case as an "action."
 {¶ 38} R.C. 4115.16(C) states:
 {¶ 39} "The administrator shall make available to the parties to any appeal or action pursuant to this section all files, documents, affidavits, or other information in the administrator's possession that pertains to the matter. The rules generally applicable to civil actions in the courts of this state shall govern all appeals or actions under this section. Any determination of a court under this section is subject to appellate review."
 {¶ 40} In construing R.C. 4115.16, we are guided by certain basic rules of statutory construction: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. "`Referential and qualifying words and phrases, where no contrary intention *Page 652 
appears, refer solely to the last antecedent.'" Independent Ins.Agents of Ohio, Inc. v. Fabe (1992), 63 Ohio St.3d 310, 314, quoting Carter v. Youngstown (1946), 146 Ohio St. 203, 209.
 {¶ 41} Here, the sentence stating that the Ohio Rules of Civil Procedure are applicable to all appeals and actions refers back to its antecedent, to wit, the preceding sentence. The preceding sentence unmistakably eliminates the administrative proceeding as an "appeal" or "action." Specifically, that sentence requires the administrator to make available all evidence needed in an appeal or civil action thereby eliminating the administrative proceeding as part of the definition of an "action."
 {¶ 42} Moreover, a review of the regulations controlling the procedure to be followed in an administrative proceeding under R.C. 4115.16(A) supports this construction. Ohio Adm.Code:4101:9-4-23 through Ohio Adm. Code 4101:9-4-28 set forth a detailed procedure to be followed in an administrative proceeding and include the form of the complaint, investigations, the issuing of subpoenas, the procedure for hearings, the satisfaction of a claim, and stop work orders. In particular, Ohio Adm.Code: 4101:9-4-23 simply requires that all complaints be in writing.
 {¶ 43} Ohio Adm. Code 4101:9-4-25 discusses the procedure to be used in the event that a hearing on an administrative complaint is held and reads, in part: "(E) To the extent no procedure is provided and to the extent not inconsistent, the procedure of chapter 119. of the revised code shall be used." Thus, instead of referring to the Ohio Rules of Civil Procedure, this regulation expressly refers to R.C. Chapter 119, which governs administrative procedure, for guidance. For all of the foregoing reasons, we find that R.C. 4115.16(C) does not mandate the application of the Ohio Rules of Civil Procedure to an administrative proceeding instituted pursuant to R.C. 4115.16(A). IBEW's second assignment of error is found well-taken.
 {¶ 44} IBEW's third, fourth, and fifth assignments of error challenge the trial court's grant of summary judgment to Vaughn, as well as the denial of IBEW's like motion, on the issue of whether Vaughn paid the employees who worked on the Electrical Distribution System Project a prevailing wage within the meaning of R.C. 4115.03 to 4115.16. Specifically, IBEW focuses on the lower court's failure to calculate Vaughn's fringe benefits credit on the cost per hour formula prescribed by the pertinent regulations found in the Ohio Administrative Code.
 {¶ 45} R.C. 4115.10 (A) provides, in part:
 {¶ 46} "No person, firm, corporation, or public authority that constructs a public improvement with its own forces * * * shall violate the wage provisions of sections 4115.03 to 4115.16
of the Revised Code, or suffer, permit, or require any *Page 653 
employee to work for less than the rate of wages so fixed, or violate the provisions of section 4115.07 of the Revised Code."
 {¶ 47} The material portion of R.C. 4115.05 reads:
 {¶ 48} "The prevailing rate of wages to be paid for a legal day's work * * * to laborers, workmen, or mechanics upon public works shall not be less * * * than the prevailing rate of wages then payable in the same trade or occupation in the locality where such public work is being performed, under collective bargaining agreements or understandings, between employers and bona fide organizations of labor in force at the date the contract for the public work, relating to the trade or occupation, was made, and collective bargaining agreements or understandings successor thereto."
 {¶ 49} R.C. 4115.031 allows the contractor or subcontractor to discharge its duty to comply with prevailing wage law by making payments in cash, by making an irrevocable contribution to fringe benefits accounts, e.g. 401(k), and/or paying for such fringe benefits as health insurance, life insurance, and pensions. Thus, to determine whether the wage paid by Vaughn to its employees on the Electrical Distribution System Project satisfied prevailing wage law, the employee's basic hourly wage and his fringe benefits must be added together. R.C.4115.03(E)(2) and (E)(3). See, also, Ohio Adm. Code4101:9-4-02(Y). The fringe benefits in this case consist of Vaughn's contributions to a training trust, a 401(k) savings trust and a Voluntary Employee Beneficiary Association trust ("VEBA"). For these benefits, Vaughn is allowed a fringe benefits credit. Ohio Adm.Code: 4101:9-4-04(A).
 {¶ 50} IBEW raises no error as to the basic hourly pay tendered by Vaughn to its employees who worked on the Electrical Distribution System Project. Instead, the union challenges the manner in which the trial court determined the dollar amount of fringe benefits credit to be included in the calculation.
 {¶ 51} In adopting the method advocated by Vaughn to compute its fringe benefits credit, the trial court relied on a common pleas court's entry on a settlement agreement between Vaughn and the Administrator of the Bureau of Employment Services in an unrelated case. See State ex rel. Vaughn Industries, Inc. v.Ohio Bur. of Emp. Serv. (Dec. 12, 1997), Wyandot C.P. 95-CV-0043. In that case, the administrator issued two determination letters against Vaughn for its failure to pay its employees the prevailing wage who worked on other public projects. Id. In the consent judgment, the administrator acceded to the voluntary dismissal, without prejudice, of the two lawsuits filed against Vaughn as a result of the administrator's determinations. Id. She also assented to a re-determination of the fringe benefits credit allowed for Vaughn's contribution to a medical benefits fund and to VEBA. In doing so, the administrator consented to a specific interpretation of Ohio Adm. Code4101:9-4-06(D). *Page 654 
 {¶ 52} Ohio Adm. Code 4101:9-4-06(D) provides:
 {¶ 53} "Where the employer provides the bureau with substantiating documentation concerning the amount contributed to the fringe benefit and the total number of hours worked by the employee on all projects deemed relevant by the director for the purposes of this calculation, hourly fringe benefit credit shall be calculated by dividing the total contribution of the employer applicable to the employee by the total number of hours worked by the employee."
 {¶ 54} In interpreting Ohio Adm. Code 4101:9-4-06(D) for the purposes of the consent judgment only, the administrator found that the relevant projects for the purpose of calculating the benefits would be "only those projects which were prevailing wage projects." Therefore, in the Wyandot County case "the total number of hours worked by the employee on all projects deemed relevant * * * within the meaning of O.A.C. 4101:9-4-06(D)" was the number of hours worked by the employee on prevailing wage projects only. As a result, the total contribution of the employer applicable to each employee was divided by the 1,700 hours that each employee worked on prevailing wage projects during the year. Id. Whether or not Vaughn's contributions to fringe benefits for all projects, both public and private, were used as the "total contribution of the employer applicable to each employee" cannot be ascertained from the consent judgment entry.
 {¶ 55} IBEW contends that the Wood County Common Pleas Court erred in adopting the above method because, in construing the material statutes and regulations together, the fringe benefits credit must be based on actual cost of the benefits per hour per employee. In other words, IBEW argues that the total contribution of the employer to fringe benefits for a specific employee for both public and private projects must be divided by the total number of hours worked by that employee on both public, i.e., prevailing wage, projects and private projects.
 {¶ 56} We first note that a common court pleas court's decision is not binding on an appellate court. State ex rel.Vickers v. Summit County Council, 97 Ohio St.3d 204, 209,2002-Ohio-5583 at ¶ 30; Stubbins v. Nationwide AgribusinessIns. Co., 6th Dist. No. F-02-031, 2003-Ohio-3456 at ¶ 9 fn. 4. Further, as argued by IBEW, a settlement agreement is binding only on the parties to that agreement. Clark v. Grillot, 2nd Dist. No. 1538, 2001-Ohio-1691. Thus, we are not required to adopt the construction of "all projects deemed relevant by the director for the purposes of this calculation" as set forth in the settlement agreement. In addition, in the instant case, the administrator never made any determination on the projects that he or she considered relevant to the calculations. Stubbins is, therefore, clearly distinguishable from this cause. As a result, we find that the issue in the case under consideration is whether R.C. 4115.03 to 4115.16 and Ohio Adm.Code: *Page 655 4101:9-4-06(D) allow an employer, in calculating its fringe benefits credit, to apply its total contributions to fringe benefits in both the public and private sector to a particular employee and then divide this amount by only the hours that the employee worked on public projects.
 {¶ 57} We repeat, in analyzing a statute or regulation, the paramount goal is to ascertain and give effect to the legislature's intent in enacting the statute. Brooks v. OhioState Univ. (1996), 111 Ohio App.3d 342, 349. In the present case, we know that the legislature's intent in enacting R.C.4115.03 to 4115.16, and the regulations promulgated thereunder, is "to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector" State ex rel. Evans v. Moore,69 Ohio St.2d at 91.
 {¶ 58} If the language used in a statute is clear and unambiguous, the statutes and regulations must be applied as written and no further interpretation is necessary. Columbus Franklin Cty. Metro Park Dist. v. Shank (1992),65 Ohio St.3d 86, 103. "Conversely, where uncertainty exists regarding legislative or administrative intent in the drafting of a statute or regulation, all rules of construction are available to assist a reviewing court." Id. at fn. 17. Moreover, statutes and regulations that relate to the same general subject matter must be read in pari materia, and, in construing them together, a "court must give such a reasonable construction as to give the proper force and effect to each and all such statutes [and regulations]." Johnson's Markets, Inc. v. New Carlisle Dept. ofHealth (1991), 58 Ohio St.3d 28, 35-36.
 {¶ 59} The definitions in R.C. 4115.03 plainly and unambiguously define those projects relevant to the purposes of Ohio's Prevailing Wage Law as public projects. For example, the projects must involve "public improvements," that is, "all buildings * * * constructed by a public authority of the state * * *" or one who contracts with a public authority for, either new or, among other things, the reconstruction or renovation of a public building. See R.C. 4115.03(A), (B), and (C).
 {¶ 60} Ohio Adm.Code: 4101:9-4-06(A) states that it is the duty of each employer to calculate the amount of credit it seeks for fringe benefits. Ohio Adm.Code: 4101:9-4-06(B) requires the employer to submit a certified payroll report to the prevailing wage coordinator. This report must, "at a minimum include the basic hourly rate, calculated hourly rate of fringe benefits credited, [and] all permissible payroll deductions.
 {¶ 61} Reading the foregoing statutes and regulations together, we conclude that their plain and unambiguous language requires us to find that the trial court's interpretation of Ohio Adm.Code: 4101:9-4-06(D) defeats the intent of the General Assembly in enacting R.C. 4115.03 to R.C. 4115.16. We hold that in *Page 656 
determining compliance with Ohio's Prevailing Wage Law, and unless otherwise modified by the administrator, fringe benefits credit must be calculated on an hour for hour basis by dividing the employer's total contribution to fringe benefits on public projects by the total number of hours worked by the employee on public projects. Accordingly, the trial court erred as a matter of law in granting summary judgment to Vaughn.
 {¶ 62} However, because IBEW admits that, due to the fact that Vaughn never supplied any documentation to substantiate its claimed contributions to fringe benefits, we will not perform the necessary calculations. Rather, we remand this cause to the trial court with instructions to perform those calculations for both the Psychology Building Project and the Electrical Distribution System Project based on the evidence offered by the parties. Thus, we find that, at this particular point in time, the trial court did not err in denying IBEW's motion for summary judgment. Based on the foregoing, IBEW's third, fourth, and fifth assignments of error are found well-taken, in part, and not well-taken, in part.
 {¶ 63} Because the trial court never considered the issues raised in IBEW's sixth and seventh assignments of error, we cannot address those issues on appeal. Oschmann v. Great Am.Ins. Co, 10th Dist, No, 01AP-1265, 2003-Ohio-4679 at ¶ 21, citing Mills-Jenninings, Inc. v. Dept. of Liquor Control
(1982), 70 Ohio St.2d 95, 99. Accordingly, we find that IBEW's sixth and seventh assignments of area are not ready for our review.
 {¶ 64} Finally, because we reverse the trial court's judgment, Vaughn cannot recover attorney's fees pursuant to R.C.4115.16(D).[1] Therefore, Vaughn's assignment of error regarding this issue is found not well-taken.
 {¶ 65} The judgment of the Wood County Court of Common Pleas is reversed, in part, and remanded to that court for further proceedings consistent with this decision. The common pleas court's judgment as to the denial of IBEW's motion for summary judgment is affirmed. Vaughn and IBEW are ordered to pay the costs of this appeal in equal shares.
JUDGMENT REVERSED, IN PART AND AFFIRMED, IN PART.
Handwork, P.J., Knepper, J. and Lanzinger, J. concur.
[1] R.C. 4115.16(D) states that if an employer is the prevailing party, the court may award it court costs and attorney's fees. Vaughn is no longer the prevailing party. *Page 657