[Cite as *Vaughn Industries, LLC v. Lake Erie Elec., Inc.*, 2011-Ohio-1146.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| VAUGHN INDUSTRIES, LLC | : | Julie A. Edwards, P.J. |
|  | : | W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : | Case No. 2010CA0043 |
|  | : |  |
|  | : |  |
| LAKE ERIE ELECTRIC, INC. | : | O P I N I O N |
| Defendant-Appellee |  |  |

CHARACTER OF PROCEEDING:      Civil Appeal from Richland County
Court of Common Pleas Case No.
08CV2084

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 9, 2011

APPEARANCES:

For Plaintiff-Appellant                                For Defendant-Appellee

DAVID T. ANDREWS                              LINDA C. ASHAR, ESQ.
JERRY P. CLINE                                    AMY L. DELUCA
Andrews & Wyatt, LLC                          Wickens Herzer Panza
561 Boston Mills Road, Ste. 700         Cook & Batista Company
Hudson, Ohio 44236                          35765 Chester Road
                                               Avon, Ohio 44011

*Edwards, P.J.*

{¶1} Plaintiff-appellant, Vaughn Industries, LLC, appeals from the December 22, 2009, and March 1, 2010, Orders of the Richland County Court of Common Pleas.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant Vaughn Industries, LLC is a non-union electrical and mechanical contractor. Appellee Lake Erie Electric, Inc. is a union electrical contractor. In March of 2007, both bid the electrical contracts for the Richland County Jail Project, a public works construction jail project. Appellee was awarded the contract on or about April 27, 2007 and completed work on the same on or about April 4, 2009.

{¶3} On or about January 29, 2008, appellant filed a complaint with the Department of Commerce (DOC), alleging that appellee had committed prevailing wage violations on the project. The complaint, alleged, in part, that appellee had taken credit for contributions into a fund, plan or program that was not actuarially sound. DOC assigned Sean Seibert as the investigator on the case. As memorialized in an e-mail from Seibert to appellee dated November 13, 2008, Seibert found appellee in violation of the prevailing wage law and indicated that appellee owed $442.93. Seibert, in such letter, asked appellee to notify him if it found any problems. Pursuant to a letter to appellant dated November 17, 2008, DOC notified appellant that its investigation had been completed and that the complaint had been closed based upon R.C. 4115.16(B). Appellee paid the amount it owed.

{¶4} On November 17, 2008, appellant filed a complaint against appellee in the Richland County Court of Common Pleas, alleging various violations of Ohio's prevailing wage law. Appellant filed an amended complaint on December 17, 2008.

{¶5} On November 17, 2009, appellant filed a Motion to Compel pursuant to Ohio Civ. R. 37. Appellant, specifically sought an order from the trial court compelling appellee to respond to the following: "Interrogatory No. 12 Identify all projects, both public and private, including address and location by county and state, for the years 2007 and 2008, that were worked on by any Lake Erie employee(s) who also worked on the Richland County Jail Project in 2007 and/or 2008. Request for Production of Documents: "Production Request No. 4 For 2007 and 2008, for employees who worked on the Project, provide proof of payment, including checks, electronic funds transfer receipts or other documents showing contributions by Lake Erie into all fringe benefit plans, funds of programs for said employees. Production Request No. 5 For all projects indentified in Interrogatory No. 12, provide all of the certified payroll reports for the public projects and the equivalent payroll records for the private projects for the years 2007 and 2008. Production Request No. 7 For the years 2007 and 2008, provide a copy of individual payroll records for all Lake Erie employees who worked on the Richland County Jail Project, including but not limited to, time cards, copies of paychecks and direct deposit slips." The trial court, as memorialized in an Order filed on December 18, 2009, overruled such motion.

{¶6} Subsequently, on December 24, 2009, appellant filed a Motion to Compel the International Brotherhood of Electrical Workers Local 688 Funds ("Funds") and the National Electrical Contractors Association ("NECA") to respond to appellant's subpoenas duces tecum. The subpoenas had requested the above to produce or permit inspection and copying of the following documents:

**{¶7}** "(1) The Summary Plan Descriptions and Plan Documents in effect from January 1, 2007 to the present for:

**{¶8}** "a. IBEW Local No. 688 Retirement Plan (Annuity)

**{¶9}** "b. IBEW Local No. 688 Pension Plan

**{¶10}** "c. National Electrical Benefit Fund (NEBF)

**{¶11}** "(2) Any and all documents that demonstrate the methodology, calculation and/or computation for deriving the hourly fringe benefit amount for each benefit plan and/or fund set forth above from January 1, 2007 to the present;

**{¶12}** "(3) All actuarial reports prepared for or on behalf of the plans and/or funds described above from January 2, 2007 to the present;…"

**{¶13}** Appellant, in its motion, argued that it was entitled to the actuarial documents that it requested because it "relied upon the fringe benefits credits and corresponding actuarial calculations set forth in the CBA [Collective Bargaining Agreement covering appellee's employees] when it bid on the project." Appellant alleged that such calculations were "actuarially unsound."

**{¶14}** On December 29, 2009, appellee filed a Motion for Summary Judgment. Appellee filed a Motion for Partial Summary Judgment on December 31, 2009.

**{¶15}** Pursuant to an Order filed on February 10, 2010, the trial court granted appellant's December 24, 2009 Motion to Compel. The trial court ordered the International Brotherhood of Electrical Workers Local 688 Funds and the National Electrical Contractors Association to respond to the subpoenas duces tecum. No deadline to respond was set forth in the trial court's order.

{¶16} Thereafter, appellant, on February 18, 2010, filed a Civ.R. 56(F) Motion for Extension of Time and Motion to Postpone the Trial Date. Appellant, in is motion, alleged that it could not fully respond to appellee's Motion for Summary Judgment until the subpoenaed documents were produced and follow-up discovery was completed. Appellant specifically sought an extension of the February 22, 2010 deadline to respond to appellee's Motion for Summary Judgment, of the discovery deadline and of the March 5, 2010 trial date. On February 23, 2010, appellant filed a memorandum in opposition to appellee's Motion for Summary Judgment. Appellant, in its memorandum, noted that as of February 22, 2010, it had not been served with the documents that the trial court ordered to be produced by the subpoenaed parties.

{¶17} Pursuant to an Order filed on March 1, 2010, the trial court granted appellee's Motion for Summary Judgment while overruling appellant's Motion for Partial Summary Judgment. The trial court also overruled appellant's motion for an extension of time and for postponement of the trial as moot.

{¶18} Appellant now appeals from the trial court's December 19, 2009 and March 1, 2010 Orders, raising the following assignments of error on appeal:

{¶19} "I. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE INVESTIGATOR'S E-MAIL CONSTITUTED A 'RULING ON THE MERITS' THAT DIVESTED PLAINTIFF OF AUTHORITY TO INITIATE AN ACTION PURSUANT TO R.C. § 4115.16.

{¶20} "II. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE HOURLY FRINGE BENEFIT CREDIT WHICH APPELLEE TOOK IS NOT REQUIRED TO BE 'ACTUARIALLY SOUND.'

{¶21} "III. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S CIVIL RULE 56(F) MOTION WHERE DISCOVERY ORDERED BY THE COURT HAD NOT YET BEEN COMPLETED.

{¶22} "IV. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DISCOVERY THAT THE OHIO DEPARTMENT OF COMMERCE HAS DETERMINED IS RELEVANT TO THE CALCULATION OF THE PREVAILING WAGE."

I

{¶23} Appellant, in its first assignment of error, argues that the trial court erred in finding that the email issued by Sean Seibert, the DOC investigator, constituted a "ruling on the merits" that divested appellant of authority to initiate an action pursuant to R.C. 4115.16. We agree.

{¶24} R.C. 4115.16(A) authorizes an "interested party" to file a complaint with the director of commerce alleging a prevailing-wage violation. *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrigeration, Heating & Air Conditioning, Inc.,* 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, ¶ 11. If the director has not ruled on the merits of the complaint within sixty (60) days, the "interested party" may file a complaint in the court of common pleas of the county in which the violation allegedly occurred pursuant to R.C. 4115.16(B). Id.

{¶25} In the case sub judice, the parties do not dispute that appellant was an "interested party". An "interested party" with respect to a particular public improvement is defined as: (1) Any person who submits a bid for the purpose of securing the award of a contract for construction of the public improvement." R.C. 4511.03(F)(1).

{¶26} However, the parties disagree as to whether or not the November 13, 2009 email from Sean Seibert to appellee was a ruling on the merits. The trial court, in its March 1, 2010 Order, found that the email was a ruling on the merits and that the case sub judice was brought without statutory authority because the same had been issued within sixty (60) days of appellant's complaint. In so holding, the trial court stated, in relevant part, as follows:

{¶27} "Ohio Revised Code § 4115.13, which addresses the Department's investigation of alleged violations of prevailing wage law, states that '[a]t the conclusion of the investigation, the director or a designated representative shall make a recommendation as to whether the alleged violation was committed.'[1]  Further, the statute provides that when an underpayment was the result of a misinterpretation of the statute or an erroneous preparation of the payroll documents, 'the director or a designated representative may make a decision ordering the employer to make restitution to the employees, or on their behalf, the plans, funds, or programs for any type of fringe benefits described in the applicable wage determination.'[2]

{¶28} "The court recognizes the letter from Mr. Siebert (sic) as precisely such a decision.  It informed Lake Erie that a violation had been committed, and it instructed Lake Erie to make restitution.  As such, Vaughn had no statutory authority for the filing of this lawsuit, as the law allows an interested party to file suit in common pleas court only '[i]f the director has not ruled on the merits of the complaint within sixty days after its filing.'[3]"

---

[1] 'Ohio Rev. Code § 4115.13(B).'
[2] 'Ohio Rev. Code § 4115.13(C).'
[3] 'Ohio Rev. Code § 4115.16(B).'

{¶29} Robert Kennedy, who was the superintendent of the DOC's Wage and Hour Bureau, testified in the case of *Bergman v. Monarch Construction Co.*, Butler App. No. CA2008-02-044, 2009-Ohio-551, which was a prevailing wage case. In such case, the investigation process for prevailing wage cases was explained by Kennedy as follows: "The court heard testimony regarding the way Commerce views its implementation authority under R.C. Chapter 4115 from Robert Kennedy, Chief of the Bureau of Wage and Hour, a division of Labor and Work Safety under Ohio's Department of Commerce. During his testimony, both parties asked Kennedy specific questions hoping to clear up ambiguities in the statute. Pertinent to this appeal, Kennedy explained the process by which an employee makes a complaint, how Commerce investigates that complaint, and then makes an initial determination as to the whether the violation occurred and what back-pay the violating party may owe. Kennedy called this initial step a 'predetermination' in which Commerce lets the contractor know that the investigation has revealed a violation and allows the party to supplement the record so that Commerce could have 'the audits as accurate as possible before [it] actually issue[s] a determination.' This initial step then becomes an official determination when Robert Kennedy signs it and sends notice to the interested parties. Id at paragraph 50.

{¶30} In the case sub judice, the same Robert Kennedy was deposed. During his deposition, he testified that he had been Superintendent of the Division of Labor and Worker Safety at DOC since 2007 and prior to such time, was Chief of the Bureau of Wage and Hour. Kennedy testified that after the investigator assigned to a case finishes his/her review of his/her audit of the complaint, the investigator sends out what is called

a predetermination to let the contractor know what the investigator's finding is and to give the contractor time to look over the same and contact the investigator if the contractor has any issues with the finding. Kennedy testified that there was not a finding of a prevailing wage violation at this point, but rather only a preliminary review. When asked, he agreed that the predetermination was not the "official agency action" and that the contractor, after a predetermination, has an additional chance to provide supplemental documentation. Deposition of Robert Kennedy at 157.

{¶31} Kennedy further testified that if, after receiving the additional information, the investigator feels that his or her determination is correct, the investigator sends it to Columbus for a determination or a request to close.[4] According to Kennedy, "that's where if they request a determination, that's when a determination will be issued from Columbus with the actual letter of finding…" Id at 159.

{¶32} Based on the foregoing, we find that the trial court erred in finding that the email issued by Sean Seibert, the DOC investigator, constituted a "ruling on the merits' that divested appellant of authority to initiate an action pursuant to R.C. 4115.16.

{¶33} Appellant's first assignment of error is, therefore, sustained.[5]

II

{¶34} Appellant, in its second assignment of error, argues that the trial court erred in holding that the hourly fringe benefit credit that appellee took was not required to be actuarially sound. We disagree.

---

[4] Kennedy testified that a request to close was issued when there was a finding of no violation or when the contractor paid based upon the predetermination (before the complaint reached the determination level).

[5] While sustaining appellant's first assignment of error, we note that the trial court, gave additional reasons for granting summary judgment in favor of appellee. Thus, our disposition of appellant's first assignment of error is not dispositive.

{¶35} As is stated above, appellant filed the case sub judice against appellee, alleging that appellee had violated Ohio's prevailing wage law. Appellant specifically alleged that appellee had violated the same by failing to properly calculate the fringe benefit credit.

{¶36} As noted by the Ohio Supreme Court in *J.A. Croson Co. v. J.A. Guy, Inc.*, 81 Ohio St.3d 346, 349, 1998-Ohio-621, 691 N.E.2d 655, "[t]he prevailing wage statutes, R.C. 4115.03 through R.C. 4115.16, require contractors and subcontractors for public improvement projects to pay laborers and mechanics the so-called prevailing wage in the locality where the project is to be performed. '[T]he primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector.' (Plurality opinion.) *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 147, 431 N.E.2d 311, 313."

{¶37} R.C. 4115.12 provides that "[i]n order to facilitate the administration of sections 4115.03 to 4115.16 of the Revised Code, and to achieve the purposes of those sections, the director of commerce may adopt reasonable rules, not inconsistent with those sections, for contractors and subcontractors engaged in the construction, prosecution, completion, or repair of a public improvement financed in whole or in part by any public authority." The rules adopted by the director of commerce are set forth in the Ohio Administrative Code. "Because they serve to augment the prevailing-wage laws set forth in the Revised Code, [the Ohio Administrative Code rules] they must be considered when we evaluate a claim of prevailing-wage law violation." *Vaughn*

*Industries, Inc. v. Dimech Serv.*, 167 Ohio App.3d 634, 2006-Ohio-3381, 856 N.E.2d 312 at paragraph 13.

{¶38} R.C. 4115.10(A) provides as follows: "No person, firm, corporation, or public authority that constructs a public improvement with its own forces * * * shall violate the wage provisions of sections 4115.03 to 4115.16 of the Revised Code, or suffer, permit, or require any employee to work for less than the rate of wages so fixed, or violate the provisions of section 4115.07 of the Revised Code." Pursuant to R.C. 4115.031, "[t]he obligation of a contractor or subcontractor to make payment in accordance with the prevailing wage determinations of the director of commerce, insofar as Chapter 4115. of the Revised Code is concerned, may be discharged by the making of payments in cash, by the making of contributions of a type referred to in division (E)(2) of section 4115.03 of the Revised Code or by the assumption of an enforceable commitment to bear the costs of a plan or program of a type referred to in division (E)(3) of section 4115.03 of the Revised Code, or any combination thereof, where the aggregate of any such payments, contributions, and costs is not less than the rate of pay described in division (E)(1) plus the rates referred to in divisions (E)(2) and (3) of section 4115.03 of the Revised Code."

{¶39} In turn, R.C. 4115.03(E) states, in relevant part, as follows: "Prevailing wages" means the sum of the following:

{¶40} "(1) The basic hourly rate of pay;

{¶41} "(2) The rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan, or program;

{¶42} ("3) The rate of costs to the contractor or subcontractor which may be reasonably anticipated in providing the following fringe benefits to laborers and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program which was communicated in writing to the laborers and mechanics affected:…"

{¶43} The relevant Ohio Administrative Code Sections in this case are Ohio Administrative Code Sections 4101:9-4-04(A) and 4101:9-4-05(A). Section 4101:9-4-04(A) states as follows: "A) Pursuant to division (E)(2) of section 4115.03 of the Revised Code, commerce will allow credit for the "rate of contribution" irrevocably made by an employer to a trustee or to a third person pursuant to a fund, plan, or program. No credit will be allowed to the extent the employer will be able to recapture this rate of contribution or in any way divert said funds to his own use or benefit, except where the employer can demonstrate that he has erroneously contributed an excessive amount, he may recapture said amount without affecting the credit previously given, provided that he received no credit for the amount he seeks to recapture. In order for an employer to receive the credit, a trustee or third person must act in a fiduciary capacity and must assume the usual fiduciary responsibilities imposed upon trustees by applicable state or federal law. The terms fund, plan, or program are intended to recognize the various types of arrangements commonly used to provide the funded benefits contemplated by division (E)(2) of section 4115.03 of the Revised Code." (Emphasis added).

{¶44} In turn, Section 4101:9-4-05(A) states as follows: "(A) Pursuant to division (E)(3) of section 4115.03 of the Revised Code, commerce will allow credit for the rate of

costs which may be reasonably anticipated in providing fringe benefits to employees pursuant to an enforceable commitment to carry out a financially responsible plan or program of fringe benefits which was communicated in writing to the employees. The plan or program must be set up in such a way that an 'enforceable commitment' as defined in these rules exists for the provision of the fringe benefits contemplated thereby. The terms 'plan or program' include the various types of arrangements commonly used to provide the benefits contemplated by <u>division (E)(3)</u> of section 4115.03 of the Revised Code. The words 'reasonably anticipated' require a plan or program to be able to withstand a test of actuarial soundness. The words 'financially responsible' require a plan or program to be bona fide."(Emphasis added).

{¶45} Appellant, in the case sub judice, argues that pursuant to the above language contained in Section 4101:9-4-05(A), appellee was required to ensure that the fringe benefit plans and hourly credit taken were actuarially sound. According to appellant, "[a]s set forth therein, the words 'reasonably anticipated' require a plan or program to be able to withstand a test of actuarial soundness." However, we concur with the trial court that such section is not relevant to this case. Section 4101:9-4-05(A) expressly references Ohio R.C. Section 4115.03(E)(3). As is stated above, such section concerns an employer's own plan or program. The record in the case sub judice shows that appellee did not have its own fringe benefit or program plan, but rather made irrevocable contributions to a fringe benefit plan. Appellee made irrevocable contributions to the IBEW multi-employer funds under R.C. 4115.03(E)(2). The relevant Ohio Revised Code Section, therefore, is R.C. 4115.03(E)(2) rather than (E)(3). There is no language in Ohio Administrative Code Section 4101:9-4-04(A), which is the

corresponding section to R.C. 4115.03(E)(2), requiring that a plan or program referred to in R.C. 4115.03(E)(2) withstand a test of actuarial soundness.[6]

**{¶46}** Based on the foregoing, we find that the trial court did not err in holding that the hourly fringe benefit credit that appellee took was not required to be actuarially sound.

**{¶47}** Appellant's second assignment of error is, therefore, overruled.

III

**{¶48}** Appellant, in its third assignment of error, argues that the trial court abused its discretion in denying appellant's Civ.R. 56(F) motion when discovery ordered by the court had not yet been completed.

**{¶49}** Civ.R. 56(F) provides as follows: "(F) When affidavits unavailable

**{¶50}** "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

**{¶51}** At the outset, we note "[t]he provisions of Civ.R. 56(F) are all discretionary. They are not mandatory." *Carlton v. Davisson* (1995), 104 Ohio App.3d 636, 648, 662 N.E.2d 1112, citing *Ramsey v. Edgepark, Inc.* (1990), 66 Ohio App.3d 99, 106, 583 N.E.2d 443. Thus, trial courts possess broad discretion when regulating the discovery process, and a trial court's decision will not be reversed absent an abuse of

---

[6] In *Int'l. Brotherhood of Electrical Workers, Local Union No. 8 v. Vaughn Industries*, 156 Ohio App.3d 644, 2004-Ohio-1655, 808 N.E.2d 434, the court cited to Ohio Administrative Code Section 4101:9-4-04(A) in stating that appellant Vaughn was entitled to a fringe benefits credit for its contributions to a training trust, a 401(K) savings trust, and a voluntary Employee Beneficiary Association trust.

discretion. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 295 N.E.2d 659.

{¶52} The standard of review is abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.  Id.

{¶53} As is stated above, appellant, on February 18, 2010, filed a motion asking for an extension of time to respond to appellee's Motion for Summary Judgment and an extension of the discovery deadline "to conduct further discovery and depositions, if necessary, based upon the Funds and NECA's actuarial documents…" Appellant, in its motion, noted that while both NECA and the Funds, in response to appellant's subpoenas, had produced fund  documents, they had refused to produce the underlying actuarial documents supporting the hourly fringe benefit credit set forth in their collective bargaining agreement with appellee.  Appellant further noted that, in response, it had filed a Motion to Compel with the trial court to obtain the actuarial documents and that the trial court had granted the same, but had failed to provide a deadline for the production of the requested documents.

{¶54} As is stated above, in our discussion of appellant's second assignment of error, we found that appellee was not required to ensure that the fringe benefit plans and hourly credit taken by appellee were actuarially sound.  We note that where discovery proceedings would not, if allowed to proceed, aid in the establishment or

negation of facts relating to the issue to be resolved, it is not an abuse of discretion for a court to grant a motion for summary judgment before such proceedings are completed. *Ball v. Hilton Hotels* (1972), 32 Ohio App.2d 293, 290 N.E.2d 859, syllabus. We find, therefore, that the trial court did not err in overruling appellant's motion for extension.

**{¶55}** Appellant's third assignment of error is, therefore, overruled.

IV

**{¶56}** Appellant, in its fourth assignment of error, argues that the trial court erred in denying its discovery requests.

**{¶57}** In the regulation of discovery, the trial court has discretionary power, and its decisions will not be overturned absent an abuse of that discretion. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 1996-Ohio-265, 664 N.E.2d 1272; *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 295 N.E.2d 659. Generally, an appellate court reviews a claimed error relating to a discovery matter under an abuse-of-discretion standard. *Lightbody v. Rust* (2000), 137 Ohio App.3d 658, 663, 739 N.E.2d 840; *Trangle v. Rojas,* 150 Ohio App.3d 549, 2002-Ohio-6510, 782 N.E.2d 617

**{¶58}** Appellant, in the case sub judice, sought discovery from appellee of the following:

**{¶59}** "Interrogatory No. 12

**{¶60}** "Identify all projects, both public and private, including address and location by county and state, for the years 2007 and 2008, that were worked on by any Lake Erie employee(s) who also worked on the Richland County Jail Project in 2007 and/or 2008.

**{¶61}** "Production Request No. 4

**{¶62}** "For 2007 and 2008, for employees who worked on the Project, provide proof of payment, including checks, electronic funds transfer receipts or other documents showing contributions by Lake Erie into all fringe benefit plans, funds or programs for said employees.

**{¶63}** "Production Request No. 5

**{¶64}** "For all projects identified in Interrogatory No. 12, provide all of the certified payroll reports for the public projects and the equivalent payroll records of the private projects for the years 2007 and 2008.

**{¶65}** "Production Request No. 7

**{¶66}** "For the years 2007 and 2008, provide a copy of individual payroll records for all Lake Erie employees who worked on the Richland County Jail Project, including, but not limited to, time cards, copies of paychecks and direct deposit slips."

**{¶67}** Appellant claims that such information was necessary for it to determine the proper methodology for the calculation of the fringe benefit credit paid by appellee. After appellee failed to provide such information, appellant, on November 17, 2009, filed a Motion to Compel Discovery.

**{¶68}** As memorialized in an Order filed on December 18, 2009, the trial court overruled such motion. The trial court, in its Order, stated, in relevant part, as follows:

**{¶69}** "The present discovery dispute stems from Vaughn's efforts to discover what Lake Erie paid its employees who worked on the jail project when they worked on Lake Erie's non-public construction projects during 2007 and 2008. Vaughn contends that it is entitled to get that information and to include the non-public projects earnings in

Lake Erie's prevailing wage calculations. Vaughn cites no statutory authority for its contention, but instead cites the opinion of a Department of Commerce official whom Vaughn deposed.

{¶70} "The court finds no legal support for that view. The prevailing wage is defined by R.C 4115.03(E) to include the hourly rate of pay, irrevocable contributions to employee trust programs and certain enforceable fringe benefits. The appropriate inquires, therefore, are (1) how many hours did each employee work on the public improvement project, (2) what were their prevailing wage rates determined by the Department of Commerce for that work, and (3) what amounts did Lake Erie pay to or for each employee on this jail project of the compensations recognized under R.C. 4115.03(E)."

{¶71} Moreover, in *Internatl. Bhd. of Elec. Workers, Local Union No. 8 v. Vaughn Industries, Inc.,* 156 Ohio App.3d 644, 2004-Ohio-1655, 808 N.E.2d 434, the electrical workers' union filed an action against the appellant, alleging that the appellant had violated prevailing wage law. After the trial court granted summary judgment in favor of the appellant, the appellee appealed. The appellee in such case argued that the trial court had erred in the manner in which it calculated the appellant's fringe benefit credit. In concurring with the appellee, the court, in such case, stated, in relevant part, as follows: "The definitions in R.C. 4115.03 plainly and unambiguously define those projects relevant to the purposes of Ohio's Prevailing Wage Law as public projects. For example, the projects must involve '*public* improvements,' that is, 'all buildings * * * constructed by a *public* authority of the state * * *' or one who contracts with a *public*

authority for, either new or, among other things, the reconstruction or renovation of a *public* building. See R.C. 4115.03(A), (B), and (C).

**{¶72}** "Ohio Adm. Code 4101:9-4-06(A) states that it is the duty of each employer to calculate the amount of credit it seeks for fringe benefits. Ohio Adm. Code 4101:9-4-06(B) requires the employer to submit a certified payroll report to the prevailing wage coordinator. This report must 'at a minimum include the basic hourly rate, calculated hourly rate of fringe benefits credited, [and] all permissible payroll deductions.'

**{¶73}** "Reading the foregoing statutes and regulations together, we conclude that their plain and unambiguous language requires us to find that the trial court's interpretation of Ohio Adm. Code 4101:9-4-06(D) defeats the intent of the General Assembly in enacting R.C. 4115.03 to R.C. 4115.16. We hold that in determining compliance with Ohio's Prevailing Wage Law, and unless otherwise modified by the administrator, fringe benefits credit must be calculated on an hour-for-hour basis by dividing the employer's total contribution to fringe benefits on public projects by the total number of hours worked by the employee on public projects. Accordingly, the trial court erred as a matter of law in granting summary judgment to Vaughn." Id at paragraphs 59-61.

**{¶74}** Appellant, therefore, was not entitled to discovery of appellee's contributions to fringe benefits relating to non-public projects.

{¶75} Based on the foregoing, we find that the trial court did not err in denying appellant's discovery requests. Appellant's fourth assignment of error is, therefore, overruled.

{¶76} Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.

By: Edwards, P.J.

Gwin, J. and

Delaney, J. concur

_____

_____

_____
                            JUDGES

JAE/d1123

[Cite as *Vaughn Industries, LLC v. Lake Erie Elec., Inc.*, 2011-Ohio-1146.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

VAUGHN INDUSTRIES, LLC        :

                   :

          Plaintiff-Appellant      :

                   :

                   :

-vs-                       :         JUDGMENT ENTRY

                   :

LAKE ERIE ELECTRIC, INC.      :

                   :

          Defendant-Appellee    :        CASE NO. 2010CA0043

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.

 

_____

_____

_____

                                              JUDGES